# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERIS BANK,<br><br>   Plaintiff,<br><br>  v.<br><br>PATRICK E. BYRNE, THE PATRICK E. BYRNE REVOCABLE TRUST U/T/A DATED FEBRUARY 23, 2001, and THE PATRICK E. BYRNE IRREVOCABLE TRUST U/T/A DATED JULY 22, 2021,<br><br>   Defendants. | C.A. No. 26-190-JLH |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT

SMITH, KATZENSTEIN & JENKINS LLP

*Of Counsel*:

Benjamin J. Razi
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
brazi@cov.com

Robert C. Gianchetti
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001
(212) 841-1000
rgianchetti@cov.com

Dated: July 23, 2026

Elizabeth Wilburn Joyce (DE Bar #3666)
Megan Ix Brison (DE Bar #6721)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
ewj@skjlaw.com
mib@skjlaw.com

*Attorneys for Plaintiff Ameris Bank*

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES..................................................................................................... i

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF THE ARGUMENT .............................................................................. 3

STATEMENT OF FACTS ............................................................................................... 4

      A.     In December 2021, Ameris Acquired Balboa from Defendants. ........................... 4

      B.     At the Time of Ameris's Acquisition of Balboa, Balboa Was Involved in Various Pending Lawsuits. ................................................................................... 5

      C.     Defendants Agreed to Indemnify Ameris for the Balboa-Related Lawsuits. .......... 6

      D.     Ameris Repeatedly Demanded Satisfaction of the SPA Indemnification Provisions, and Byrne Unequivocally Agreed in November 2023 to Reimburse Ameris via a Separate and Independent Promise................................. 7

      E.     Defendants Belatedly Assert Fraud to Escape the Clear and Unambiguous SPA Indemnification Provisions. ........................................................................... 8

ARGUMENT .................................................................................................................... 9

I.     AMERIS'S PROMISSORY ESTOPPEL AND BREACH OF CONTRACT CLAIMS MAY CO-EXIST ALONGSIDE ITS INDEMNIFICATION CLAIM. ........................... 10

      A.     Ameris's Promissory Estoppel and Breach of Contract Claims Are Based on a Separate Agreement in November 2023, Years After the SPA Closed. ................11

      B.     Ameris's Promissory Estoppel and Breach of Contract Claims are Not Barred by the SPA; At a Minimum, Any Such Determination Cannot be Resolved at the Pleading Stage. ................................................................................ 12

II.    AMERIS IS PERMITTED TO PLEAD PROMISSORY ESTOPPEL AND BREACH OF CONTRACT IN THE ALTERNATIVE BASED ON DEFENDANTS' INCONSISTENT LITIGATION POSITIONS ON THE VALIDITY OF THE SPA. ...... 14

CONCLUSION................................................................................................................ 15

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*AM Gen. Holdings LLC v. Renco Grp., Inc.,*
2020 WL 3484069 (Del. Ch. June 26, 2020) ....................................................................... 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................................. 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................................. 10

*Bryant v. Way,*
2011 WL 2163606 (Del. Super. May 25, 2011) ................................................................... 13

*Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.,*
822 A.2d 1024 (Del. 2003) .................................................................................................. 12

*CompuCom Sys., Inc. v. Getronics Fin. Holdings B.V.,*
2012 WL 4963314 (D. Del. Oct. 16, 2012) ......................................................................... 10

*Dillon Gage Inc. of Dallas v. Umicore Precious Metals USA Inc.,*
2025 WL 3779149 (Del. Super. Dec. 30, 2025) ................................................................... 14

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,*
702 A.2d 1228 (Del. 1997) .................................................................................................. 13

*Fried v. AdaptHealth, LLC,*
2025 WL 1135203 (D. Del. Apr. 17, 2025) ......................................................................... 13

*In re Chemours Co. Sec. Litig.,*
587 F. Supp. 3d 143 (D. Del. 2022) ..................................................................................... 10

*Perrigo Co. v. Int'l Vitamin Co.,*
2019 WL 359991 (D. Del. Jan. 29, 2019) ............................................................................ 10

*Salas v. Acuity-CHS, LLC,*
2023 WL 2710180 (D. Del. Mar. 30, 2023) ......................................................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) ............................................................................................................. 10

*Umland v. PLANCO Fin.,*
542 F.3d 59 (3d Cir. 2008) .................................................................................................. 10

*White Winston Select Asset Funds, LLC v. Good Times Rests., Inc.*,
    2020 WL 4015327 (D. Del. July 16, 2020),
    *report and recommendation adopted*, 2020 WL 5362636 (D. Del. Sept. 8, 2020)........... 14

**Rules**

D. Del. LR 7.1.3(c)(2)........................................................................................................ 10

**NATURE AND STAGE OF THE PROCEEDINGS**

In December 2021, Ameris Bank ("Ameris") acquired all of the outstanding shares of capital stock of Balboa Capital Corporation ("Balboa") from Patrick E. Byrne ("Byrne"), The Patrick E. Byrne Revocable Trust U/T/A dated February 23, 2001, and The Patrick E. Byrne Irrevocable Trust U/T/A dated July 22, 2021 (collectively, the "Defendants" or "Sellers") through a Stock Purchase Agreement (the "SPA").[1]  As part of the SPA, Defendants agreed to indemnify Ameris for contractually defined "Losses," including, as relevant here, costs and legal expenses incurred by Ameris in connection with several pending lawsuits involving Balboa as of the time of the SPA's execution.  As alleged in the Complaint (D.I. 1), Ameris seeks to hold Defendants to the express bargain they struck.  To that end, Ameris asserts three claims: Indemnification (Count I.A); Breach of Contract (Count I.B); and Promissory Estoppel (Count II).

The context in which this lawsuit arises, and in which Defendants' partial motion to dismiss has been filed, bears emphasis.  This lawsuit is just one part of multi-faceted litigation ongoing between the parties.  Since the fall of 2024, Byrne and Ameris have been litigating claims asserted by Byrne in California federal court (the "California Litigation") related to the termination of his employment with Ameris.  *See* Ex. 1, *Byrne v. Ameris Bank*, No. 24-cv-1989 (C.D. Cal.).[2]  That case recently went to trial, and a jury returned a verdict in Byrne's favor.  Ex. 2.  Post-trial briefing is ongoing.

---

[1] The SPA is attached as Exhibit A to Defendants' partial motion to dismiss (D.I. 11 and D.I. 12).

[2] Aside from the SPA, the remaining exhibits cited in this brief are attached to the Declaration of Megan Ix Brison and cited herein as "Ex."  On a motion to dismiss brought under Rule 12(b)(6), the Court may consider documents incorporated into the complaint by reference. *Kickflip, Inc. v. Facebook, Inc.*, 999 F. Supp. 2d 677, 682 (D. Del. 2013).  The Court may also take judicial notice of certain matters in the public record on a motion to dismiss, including court-filed documents. *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020).

In May 2025, Ameris filed the claims it brings here in the Superior Court of the State of Delaware. *See* C.A. No. N25C-05-071 KMM CCLD (the "Superior Court Litigation").[3] Defendants refused to accept service of the complaint in that action and were served by registered mail. Ex. 5 ¶¶1–5. Defendants did not respond to that complaint, and default judgment was entered against them. Ex. 4. Defendants subsequently moved to vacate the default judgment, and the motion was granted. Ex. 6. Defendants then moved to dismiss the Superior Court Litigation based on improper venue, but did not challenge the merits of Ameris's claims. Ex. 7.

Ameris voluntarily dismissed that case and re-filed in this Court. D.I. 1. Meanwhile, hoping to escape their indemnification obligations under the SPA and avoid liability on Ameris's affirmative claims based on the clear and unambiguous language of the SPA, Defendants filed a separate defensive action against Ameris in this Court in December 2025. C.A. No. 1:25-cv-1557-JLH (the "Byrne Delaware Litigation").[4] In the Byrne Delaware Litigation, Defendants cry fraud and seek rescission of the SPA or, at a minimum, its indemnification provisions.

Defendants have moved to dismiss two counts of Ameris's three-count complaint. Defendants seek dismissal of Ameris's breach of contract and promissory estoppel claims (Counts I.B and II), which relate to a separate and independent promise made by Byrne in November 2023 as more fully described below, and solely on the basis that the SPA's exclusive remedies provision purportedly precludes those claims and limits Ameris's remedy for Defendants' misconduct to indemnification under the SPA. Defendants, however, do not seek dismissal of Ameris's primary claim for indemnification. In fact, at no point do Defendants argue that Ameris is not entitled to

---

[3] A copy of the Complaint filed in the Superior Court Litigation is attached as Exhibit 3.

[4] A copy of the First Amended Complaint filed in the Byrne Delaware Litigation is attached as Exhibit 8. Ameris is filing a Motion to Dismiss the First Amended Complaint in that action concurrently with this filing.

indemnification under the plain text of the SPA.  Accordingly, no matter the outcome of this motion, Ameris's claim for indemnification under the SPA will survive and be pursued on its merits.  But even Defendants' arguments as to Ameris's alternative claims for promissory estoppel and breach of contract fail as a matter of law.

As is the pattern across all of the parties' ongoing lawsuits, Defendants have taken fundamentally irreconcilable positions regarding the SPA.  Despite asserting in the Byrne Delaware Litigation that the SPA is the product of fraud and should be unwound, Defendants seek dismissal of Ameris's promissory estoppel and breach of contract claims in this lawsuit on the grounds that the SPA is a valid and enforceable contract that limits the relief to which Ameris is entitled in relation to Defendants' flagrant disregard for their indemnification obligations. Defendants cannot have it both ways.  If Defendants were to prevail in full in their own lawsuit and somehow invalidate the SPA, that would, in turn, invalidate the very provisions of the SPA on which they rely here in asserting that Ameris is prohibited from pursuing alternative claims for promissory estoppel and breach of contract.  In light of Defendants' own inconsistent positions regarding the validity of the SPA, Ameris should be permitted to assert claims in the alternative and preserve its rights, and Defendants' partial motion to dismiss (the "Motion") should be denied.

**SUMMARY OF THE ARGUMENT**

Ameris's indemnification claim is based on Section 8 of the SPA.  Ameris's breach of contract and promissory estoppel claims, however, are based on a separate and independent agreement by Byrne in November 2023, nearly two years after the SPA's execution, to reimburse Ameris for amounts owed by Defendants.  Defendants do not challenge the merits of Ameris's breach of contract and promissory estoppel claims.  Rather, Defendants' sole argument is that the exclusive remedies provision in Section 8.7 of the SPA contractually bars Ameris's claims.

3

Defendants' makeweight argument fails to explain how Byrne's independent commitment in November 2023 to reimburse Ameris is precluded by the SPA's exclusive remedies provision. Nor do Defendants articulate how the SPA's exclusive remedies provision could serve as such a bar when they simultaneously seek to rescind the SPA and the exclusive remedies provision with it on account of alleged fraudulent inducement in the Byrne Delaware Litigation. Throughout the various ongoing lawsuits between the parties, Defendants have asserted shifting and entirely contradictory positions regarding the enforceability of the SPA, its indemnification provisions, and by extension, its exclusive remedies provision. Even if Defendants were successful in obtaining rescission of the SPA, Ameris's claims for promissory estoppel and breach of contract stand on their own based on Byrne's subsequent promise in November 2023. In any event, Ameris is permitted to plead both contract and quasi-contract claims. While Ameris's claims ultimately lead to the same recovery, namely, Byrne's reimbursement of the costs and legal expenses incurred by Ameris in the Balboa-related litigation, such alternative pleading is necessitated by Defendants' ever-evolving positions regarding the validity of the SPA. Ameris has sufficiently stated plausible claims for promissory estoppel and breach of contract, and Defendants' Motion should be denied.

## STATEMENT OF FACTS

### A.    In December 2021, Ameris Acquired Balboa from Defendants.

Byrne founded Balboa in or about 1988 and served as its Chief Executive Officer. Compl. ¶ 8. Balboa is an online provider of business lending solutions, servicing small businesses. *Id.* Ameris, recognizing Balboa as a means to increase its small business lending initiatives and increase its presence in the financing market, negotiated with Byrne to acquire Balboa. *Id.* ¶ 9. Those negotiations proved successful for both Byrne and Ameris, culminating in the execution of the SPA in December 2021, through which Ameris purchased all outstanding shares of Balboa

4

from Defendants (the "Balboa Acquisition"). *Id.* ¶ 11. Following the Balboa Acquisition, Balboa was operated as a separate division within Ameris, and Byrne continued to serve as CEO. *Id.*

**B.    At the Time of Ameris's Acquisition of Balboa, Balboa Was Involved in Various Pending Lawsuits.**

During the SPA negotiations, Balboa was actively litigating several lawsuits, including *Dr. Jaideep Patel v. Scott Postle, Balboa Corporation, et al.*, and *Samuel Feng, M.D. v. America's MHT, Inc., et al.* (collectively, the "MHT Litigation"). *Id.* ¶ 10. The MHT Litigation resulted from an America's Medical Home Team, Inc. ("MHT") program that allowed physicians to remotely supervise nurse practitioners. *Id.* ¶ 12. For a physician to participate in the MHT, a limited liability company (the "Physician LLC") first needed to be created to secure financing for the purchase of licenses from MHT. *Id.* In October 2016, Balboa became a lender for MHT and provided such financing, but less than a year after doing so, the Physician LLCs defaulted on their Balboa loans. *Id.* In May 2017, Balboa, spearheaded by Byrne, initiated the MHT Litigation by filing collection suits against the Physician LLCs for breach of contract and breach of guaranty claims. *Id.* ¶ 13. As CEO of Balboa, Byrne directed the MHT Litigation and/or was in regular communication with Balboa's attorneys regarding the litigation. *Id.*

Each of the cases involved in the MHT Litigation, some of which included counterclaims against Balboa, was consolidated in the U.S. District Court for the Northern District of Texas, Dallas Division ("NDT"). *Id.* The MHT Litigation was pending in the NDT at the time of the SPA closing and continued post-closing. *Id.* ¶ 18. The substance of the MHT Litigation was largely resolved in March 2022 when the NDT granted summary judgment in favor of the Physician LLC defendants on Balboa's breach of contract and breach of guaranty claims. *Id.* ¶ 14. The U.S. Court of Appeals for the Fifth Circuit affirmed that decision, and Balboa received nothing for its claims. *Id.* ¶¶ 14,16.

In March 2023, the Physician LLCs moved for attorneys' fees and costs. *Id.* ¶ 15. The NDT awarded over $1 million in attorneys' fees to the Physician LLC parties and, after the Fifth Circuit affirmed the summary judgment ruling, the NDT supplemented its award adding nearly $300,000 for attorneys' fees and expenses incurred as a result of the Fifth Circuit appeal. *Id.* ¶¶ 15, 17. Together, the awards by the NDT required Balboa to pay the Physician LLCs $1,289,226.67 in attorneys' fees and $65,235.09 in expenses. *Id.* ¶ 19. Balboa's own attorneys' fees and costs amounted to $472,352.34. *Id.* In total, as of February 2026, Ameris's Losses incurred in connection with the MHT Litigation span over $1.8 million. *Id.* ¶ 28.

### C.  Defendants Agreed to Indemnify Ameris for the Balboa-Related Lawsuits.

Ameris, aware of the ongoing MHT Litigation, secured certain indemnification rights for itself at the SPA bargaining table (the "Indemnification Provisions"). *Id.* ¶¶ 18, 20; *see* SPA § 8.2. Specifically, Section 8.2 of the SPA requires Defendants to "jointly and severally … indemnify and hold harmless [Ameris] … from and against Losses …." SPA § 8.2. Article I defines "Losses" as:

> losses, liabilities, damages, awards, settlement payments, interest obligations, fines, Taxes, interest, deficiencies, costs, expenses, assessments and penalties including reasonable costs of investigating, preparing, or defending any Action and *reasonable attorneys' fees and other reasonable expenses of litigation* or similar proceedings, and, only to the extent recovered by a third party in connection with a Third Party Claim, punitive, consequential or exemplary damages.

SPA Art. 1 at 9 (emphasis added).

The SPA is unambiguous as to Defendants' indemnity obligation for Losses that arise out of the MHT Litigation.[5] Section 8.2(f) states that Defendants must indemnify Ameris against Losses resulting or arising out of: "(i) *Dr. Jaideep Patel v. Scott Postle, Balboa Capital*

---

[5] The SPA also contained a provision that provided for the potential sharing of recoveries in the MHT Litigation, if Balboa had been successful. *See* SPA § 5.14 (providing excess recoveries would be transferred to Sellers).

*Corporation, et al.*, (ii) *Samuel Feng, M.D. v. America's MHT, Inc., et al.*, (iii) any appeal of either the foregoing (i)-(ii), or (iv) other Action substantially related to the facts and circumstances underlying the foregoing (i)-(ii)…."

Section 8.7 then makes clear that indemnification is a remedy that Ameris may seek from Defendants under the SPA.  Specifically, Section 8.7 ("Exclusive Remedies Provision") states:

> If the Closing occurs, the remedies provided in this Article VIII (and claims for recovery pursuant to the R&W policy) shall constitute the sole and exclusive remedies available to any party hereto with respect to any claim relating to [the SPA] or the Transactions and the facts and circumstances relating and pertaining hereto (whether any such claim shall be made in contract, breach of warranty, tort or otherwise), other than for disputes required to be resolved pursuant to Section 2.4(c) and for Fraud; provided, however, that the foregoing shall not limit the availability to any party hereto to seek injunctive and other equitable relief, including specific performance pursuant to Section 10.10.

"Transactions" is defined as "all of the transactions provided for in, or contemplated by, this Agreement and the other Transaction Documents."  SPA, Art. I  at p.15 (Definitions).  Transaction Documents are defined as "[the SPA], the Escrow Agreement and each other agreement, certificate, instrument and document executed and delivered in connection with the Transactions."  *Id.* at p.14.

**D.      Ameris Repeatedly Demanded Satisfaction of the SPA Indemnification Provisions, and Byrne Unequivocally Agreed in November 2023 to Reimburse Ameris via a Separate and Independent Promise.**

Following the execution of the SPA, Ameris made numerous requests to Defendants for indemnification of the Losses that resulted from the MHT Litigation (the "MHT Litigation Losses").  Compl. ¶¶ 24–25.  These requests came after Balboa received notification of the MHT Litigation Losses and Byrne, as CEO of the Balboa division at Ameris, was provided information regarding the amount of those Losses.  *Id.* ¶ 24.

Following repeated requests from Ameris, on November 15, 2023, Byrne confirmed his obligation to reimburse Ameris in an email stating unequivocally: "I agree to reimburse Ameris for the MHT legal invoices per my contractual obligation regarding MHT in the stock purchase

agreement." (the "November 2023 Email").  *Id.* ¶ 25; Ex. 9 at p.1.[6]  As reflected in the November 15, 2023 email chain, Byrne made this commitment in connection with negotiations regarding the release of escrow funds to Byrne.[7]  Ex. 9.  Although Ameris proposed crediting a portion of the escrow funds at issue to the amount owed to Ameris for the MHT Litigation Losses,[8] Byrne refused, indicating he was uncertain of and evaluating his liability relating to the MHT Litigation Losses, and sought the entire payout to be made directly to him.  *Id.* at p.9-10.  As a result, Ameris requested that Byrne confirm he would reimburse Ameris for the MHT Litigation Losses prior to escrow funds being released. *Id.* at pp.1-3.  Byrne agreed to reimburse Ameris and sought release of the escrow funds.  *Id.* at p.1.

     **E.**      **Defendants Belatedly Assert Fraud to Escape the Clear and Unambiguous SPA Indemnification Provisions.**

After Ameris filed its claims in the Superior Court, but before it voluntarily dismissed and re-filed the claims in this Court, Defendants filed their own claims against Ameris in the Byrne Delaware Litigation.  Ex. 8.  In the Byrne Delaware Litigation, Defendants contend that Ameris fraudulently induced them to enter into the SPA, asserting claims for fraudulent inducement (Count I), equitable fraud (Counts II and III), and breach of Section 10.8 (Consent to Jurisdiction) of the SPA (Count IV).  *See id.* ¶¶ 38–80.  Among the relief sought by Defendants is "[r]escission or

---

[6] The November 2023 Email is incorporated into the Complaint by reference.  The Court may also take judicial notice of the November 2023 Email because it was included with Ameris's Opposition to Defendants' Motion to Vacate Default Judgment in the Superior Court Litigation (Ex. 5 at Ex. 3) and Ameris's Motion to Dismiss the initial complaint in the Byrne Delaware Litigation (D.I. 11, Ex. 10).

[7] The form of Escrow Agreement is attached to the SPA as Exhibit C.

[8] Pursuant to Section 2.3(d) of the SPA, "[i]n the event an indemnification claim arises under Section 8.2 and notice of such claim has been provided to the Sellers prior to the Expiration Date, an amount equal to the aggregate amount of Purchaser's good faith estimate of unsatisfied claims for Losses of the Purchaser Indemnified Party properly made on or prior to such date shall be retained from the Escrow Amount in the Escrow Account until the applicable underlying claims are resolved in accordance with Article VIII and the Escrow Agreement, and shall then be applied or distributed as provided for in this Agreement and the Escrow Agreement."

partial rescission of the SPA on the basis that the Sellers' agreement to the same was fraudulently induced" and "[a]lternatively, reformation of the SPA to void Section 8 [Survival and Indemnification] therein." *Id.* at p. 15 (Prayer for Relief (a) and (c)); *see also id.* ¶¶ 47–49, 60–62, 73–75.[9]   Section 8 also includes the Exclusive Remedies Provision on which Defendants' Motion relies.

Defendants' fraudulent inducement claims in the Byrne Delaware Litigation relate to Ameris's purported intent to comply with a separate alleged agreement between Ameris and Byrne referred to as the long-term incentive plan (the "LTIP").  *See, e.g.,* Ex. 8 at ¶¶ 3-5, 17-27.  In support of the fraudulent inducement claims, Defendants contend that Ameris never intended to comply with the LTIP, and, had they known that, Defendants never would have agreed to the Indemnification Provisions (or the SPA).  *Id.* at ¶¶ 39-43, 51-55; 64-68.  According to Byrne, he learned in 2022 that "Ameris never intended to honor the LTIP" (*see id.* ¶¶ 3, 23, 24), and he complained to Ameris that it was miscalculating LTIP proceeds in June 2023.  *Id.* ¶ 25.  By his own admission, Byrne became aware of the purported basis for his claim that the Indemnification Provisions (and the SPA) should be rescinded no later than June 2023.  *Id.*  Yet, he committed to paying the MHT legal invoices just five months later in the November 2023 Email.  Ex. 9 at p.1. He then waited until December 2025 to file a claim that the SPA and its Indemnification Provisions should be rescinded on account of purported fraudulent inducement.

## ARGUMENT

On a motion to dismiss pursuant to Rule 12(b)(6), the court tests whether the complaint "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[9] Although Defendants have not yet filed an answer to the portions of the Complaint they are not contesting (*i.e.*, Ameris's primary claim for indemnification), Defendants have indicated they intend to raise their fraud claims from the Byrne Delaware Litigation as an affirmative defense in this action.

570 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *In re Chemours Co. Sec. Litig.*, 587 F. Supp. 3d 143, 153 (D. Del. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In making that determination, "the court must accept as true all factual allegations in the complaint and view them in the light most favorable to plaintiffs." *Id.* (citing *Umland v. PLANCO Fin.*, 542 F.3d 59, 64 (3d Cir. 2008)). In ruling on a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference[] and matters of which the court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## I. AMERIS'S PROMISSORY ESTOPPEL AND BREACH OF CONTRACT CLAIMS MAY CO-EXIST ALONGSIDE ITS INDEMNIFICATION CLAIM.

Defendants do not contest that Ameris has sufficiently pled the elements for its promissory estoppel and breach of contract claims.[10] Defendants only argue that these claims are barred by the Exclusive Remedies Provision in Section 8.7 of the SPA. Mot. at 4–5. Defendants' argument rests on the broad assertion that Byrne's later agreement in the November 2023 Email to reimburse Ameris "relate[s] to the SPA" and therefore Ameris's claims are contractually barred.[11] *Id.* Defendants are mistaken.

---

[10] Arguments not raised in an opening brief are waived. *See* D. Del. LR 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."); *Perrigo Co. v. Int'l Vitamin Co.*, 2019 WL 359991, at *2 (D. Del. Jan. 29, 2019) ("Because this argument was raised for the first time in a reply brief, this Court may consider it waived.").

[11] The sole case upon which Defendants rely in support of their argument, *CompuCom Sys., Inc. v. Getronics Fin. Holdings B.V.*, 2012 WL 4963314, at *5 (D. Del. Oct. 16, 2012), simply states general contract interpretation principles with respect to interpretation of an arbitration provision and makes only passing reference to an exclusive remedies provision that can best be read as dicta.

**A.      Ameris's Promissory Estoppel and Breach of Contract Claims Are Based on a Separate Agreement in November 2023, Years After the SPA Closed.**

The allegations in the Complaint, along with the contents of the SPA and the November 2023 Email, establish an independent promise by Byrne—separate and apart from the SPA—to reimburse Ameris for the MHT legal invoices, on which Ameris reasonably relied. *See* Compl., Count I.B ¶¶ 43–44 (alleging that on November 15, 2023, Byrne agreed to reimburse Ameris for the MHT legal invoices); Compl. Count II ¶¶ 49–50 (alleging on November 15, 2023, Byrne made a clear and unambiguous promise to reimburse Ameris for the MHT legal invoices, and Ameris reasonably relied on that promise and continued to pay for the MHT Litigation and incur Losses). The November 2023 Email is a result of negotiations between Ameris and Byrne regarding the release of certain escrow funds. Rather than have the escrow funds applied to the balance of the MHT Litigation Losses, as contemplated in the SPA (*see* SPA § 2.3(d)), Byrne sought to have those funds released directly to him and in exchange stated that he agreed to reimburse Ameris for the MHT Litigation Losses. Ex. 9 at p.1.

Byrne's promise to reimburse Ameris for the MHT Litigation Losses in November 2023 came after numerous demands by Ameris for indemnification. Based on Byrne's independent promise in November 2023, Ameris continued to pay for the MHT Litigation and incur Losses. Compl. ¶ 50. It is reasonable to infer that Byrne's new agreement to reimburse Ameris for the MHT Litigation Losses in November 2023 was intended to be in addition to his contractual obligations pursuant to the SPA.[12]

---

[12] Alternatively, it is possible that Byrne fraudulently misrepresented his intention in November 2023 to pay the MHT legal invoices in order to receive the escrow payment. Ameris reserves all rights to seek to amend its complaint to bring a claim for fraudulent inducement.

11

**B.** **Ameris's Promissory Estoppel and Breach of Contract Claims are Not Barred by the SPA; At a Minimum, Any Such Determination Cannot be Resolved at the Pleading Stage.**

Defendants claim that the SPA's Exclusive Remedies Provision is unambiguous and that Byrne's subsequent agreement to pay the MHT Litigation Losses in November 2023 is "relate[d] to the SPA." Mot. at 4. Thus, according to Defendants, Ameris's claims for promissory estoppel and breach of contract are barred. However, nothing in the language of Section 8.7 of the SPA encompasses future promises or agreements that are made after the SPA. Section 8.7 references claims "relating to this Agreement or the Transactions and the facts and circumstances relating and pertaining hereto." The "Agreement" is defined as the SPA itself. *See* SPA Article I, p. 2 (Definitions). "Transactions" are defined as "all of the transactions provided for in, or contemplated by" the SPA, and "the other Transaction Documents." *Id.* at p.15. The other "Transaction Documents" are defined as the agreements "executed and delivered in connection with the Transactions." *Id*. at p.14. The November 2023 Email and the promise contained therein is a later agreement by Byrne not provided for within, nor contemplated by the SPA, and indeed varies the process under the Escrow Agreement.[13] *See* SPA § 2.3(d) and Ex. C.

Accepting the facts as true and viewing them in a light most favorable to Ameris as is required on this Motion, the November 2023 Email constitutes a new and separate agreement falling outside the scope of the SPA that it is not barred by the SPA's Exclusive Remedies Provision. *See, e.g.*, *Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1033–34 (Del. 2003) (permitting breach of contract and promissory estoppel claims to proceed when promissory estoppel claim was based on promises that were in addition to the existing contractual

---

[13] Even the exception contained in Section 8.7 for "Fraud" claims is not so broad as to include future representations; it is limited to the "making of the representations and warranties contained in this Agreement." *Id.*

relationship between the parties); *see also Bryant v. Way*, 2011 WL 2163606, at *2 (Del. Super. May 25, 2011) (finding factual issues regarding email agreement and separate memorandum agreement precluded a motion to dismiss contractual and quasi-contractual claims). Defendants' position that Byrne's November 2023 Email agreement to pay for the MHT Litigation Losses is related to the SPA such that it falls within the scope of the SPA's Exclusive Remedies Provision thus is misplaced.

But even if the Court determines that Defendants' argument is reasonable, then at a minimum there is ambiguity in the scope of the SPA's Exclusive Remedies Provision. As a result, determining whether the post-SPA agreement between Ameris and Byrne falls within the scope of that provision cannot be resolved at the pleadings stage.[14] *See, e.g.*, *Fried v. AdaptHealth, LLC*, 2025 WL 1135203, at *2 (D. Del. Apr. 17, 2025) ("If … the contract language is ambiguous, the Court may not resolve the ambiguity on a motion to dismiss."). Under either analysis, Defendants' Motion should be denied.

---

[14] Defendants have not asserted that any section of the Indemnification Provisions is ambiguous, and it remains Ameris's position that Defendants' indemnity obligations related to the MHT Litigation are clear and unambiguous. Any ambiguity in Section 8.7 of the SPA regarding exclusive remedies does not extend to other portions of Article VIII of the SPA. *See, e.g., Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228 (Del. 1997) (finding single indemnification provision within a contract was ambiguous); *AM Gen. Holdings LLC v. Renco Grp., Inc.,* 2020 WL 3484069, at *4-5 (Del. Ch. June 26, 2020) (enforcing unambiguous provisions of an LLC agreement even though other provisions of the same agreement had previously been found ambiguous).

**II.    AMERIS IS PERMITTED TO PLEAD PROMISSORY ESTOPPEL AND BREACH OF CONTRACT IN THE ALTERNATIVE BASED ON DEFENDANTS' INCONSISTENT LITIGATION POSITIONS ON THE VALIDITY OF THE SPA.**

Ameris's breach of contract and promissory estoppel claims are also appropriately pled alongside its indemnification claim because Defendants have raised "doubt surrounding the enforceability or the existence of the contract." *Salas v. Acuity-CHS, LLC*, 2023 WL 2710180, at *11 (D. Del. Mar. 30, 2023) (denying motion to dismiss unjust enrichment claim as an alternative theory of recovery to breach of contract claim because, "[u]nder Delaware law, 'it is permissible for a party to seek quasi-contractual relief in the alternative to its contract claims'" (citation omitted)); *see also White Winston Select Asset Funds, LLC v. Good Times Rests., Inc.*, 2020 WL 4015327, at *7 (D. Del. July 16, 2020), *report and recommendation adopted*, 2020 WL 5362636 (D. Del. Sept. 8, 2020) (declining to dismiss promissory estoppel claim pled as alternative to breach of contract claim and noting that "plaintiff may plead promissory estoppel as an alternative to breach of contract" if a defendant denies being "contractually bound to the plaintiff[] or asserts that the contract is unenforceable"). Defendants' changing positions regarding their indemnification obligations not only authorize Ameris to plead alternative claims but render alternative pleading necessary to preserve Ameris's rights in light of Defendants' inconsistent assertions.

Indeed, Ameris's claims for breach of contract and promissory estoppel are necessitated by Defendants' allegations in the Byrne Delaware Litigation that the SPA and its Indemnification Provisions are invalid and unenforceable. *See Dillon Gage Inc. of Dallas v. Umicore Precious Metals USA Inc.*, 2025 WL 3779149, at *3 (Del. Super. Dec. 30, 2025) (denying motion to dismiss claim for promissory estoppel asserted alongside claim for breach of contract). Defendants' arguments raised in connection with their Motion conflict with their own allegations and position articulated in the Byrne Delaware Litigation. On this Motion, Defendants opportunistically argue

14

that the SPA Indemnification Provisions provide Ameris with the sole relief it can seek related to Byrne's indemnification commitment, while ignoring that they are simultaneously seeking rescission of that same contract (and the same SPA Indemnification Provisions) in the Byrne Delaware Litigation based on alleged fraudulent inducement.

Defendants cannot have it both ways; either the SPA and SPA Indemnification Provisions are a valid enforceable contract, or they are not.  Given Byrne's own litigation stance on the purported validity of the SPA, Ameris is entitled to plead breach of contract and promissory estoppel in the alternative to its claims asserted under the SPA.  If the Court were to bless Defendants' gambit and grant the Motion, it would effectively force Ameris, at the pleading stage, to limit its avenue of recovery solely pursuant to the SPA while Ameris confronts claims by Defendants in the Byrne Delaware Litigation to rescind that very contract on account of fraudulent inducement.  Defendants' gamesmanship should not be so rewarded.

**CONCLUSION**

For the reasons stated above, Ameris respectfully requests that the Court deny Defendants' partial motion to dismiss.  If the Court were to grant Defendants' partial motion to dismiss in part or in full, Ameris respectfully requests that any dismissal be without prejudice, and that Ameris be granted leave to amend its complaint.

15

SMITH, KATZENSTEIN & JENKINS LLP

OF COUNSEL:

By:  /s/ *Megan Ix Brison*
Elizabeth Wilburn Joyce (DE Bar #3666)
Benjamin J. Razi
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
brazi@cov.com

Megan Ix Brison (DE Bar #6721)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
ewj@skjlaw.com
mib@skjlaw.com

*Attorneys for Plaintiff Ameris Bank*

Robert C. Gianchetti
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001
(212) 841-1000
rgianchetti@cov.com


Dated: July 23, 2026

16