**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

AMERIS BANK,

Plaintiff/Counterclaim Defendant,

v.

PATRICK E. BYRNE, THE PATRICK E. BYRNE REVOCABLE TRUST U/T/A DATED FEBRUARY 23, 2001, and THE PATRICK E. BYRNE IRREVOCABLE TRUST U/T/A DATED JULY 22, 2021,

Defendants/Counterclaim Plaintiffs.

Case No.: 1:26-cv-00190-JLH

(Consolidated)

# DEFENDANTS/COUNTERCLAIM PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE COUNTERCLAIMS / SECOND AMENDED COMPLAINT

Dated: September 30, 2026

Benjamin P. Chapple (No. 5871)
John T. Miraglia (No. 6682)
REED SMITH LLP
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
302-778-7500
bchapple@reedsmith.com
jmiraglia@reedsmith.com

*Attorneys for Defendants/Counterclaim Plaintiffs Patrick E. Byrne, The Patrick E. Byrne Revocable Trust U/T/A Dated February 23, 2001, and The Patrick E. Byrne Irrevocable Trust U/T/A Dated July 22, 2021*

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. NATURE AND STAGE OF PROCEEDINGS .......... 1

III. SUMMARY OF THE ARGUMENT .......... 1

IV. STATEMENT OF FACTS .......... 3

A. Sellers Select Ameris Because it Promises to Take Care of Balboa Employees .......... 3

B. Ameris Never Prepares to Honor the LTIP—and Breaches It at the First Opportunity .......... 5

C. A California Jury Finds Ameris Acted with Malice, Oppression, or Fraud .......... 6

D. Ameris Sues Sellers in the Wrong Forum .......... 6

V. LEGAL STANDARDS .......... 7

VI. ARGUMENT .......... 7

A. The Motion Is Timely, Not in Bad Faith, and Will Not Prejudice Ameris .......... 7

B. The Proposed Amendments Are Not Futile .......... 9

1. The SAC Alleges Ameris Falsely Represented that it Intended to Comply with the LTIP to Induce Execution of the SPA .......... 9

2. Delaware's Anti-Bootstrapping Rule Does Not Apply .......... 12

3. The SPA's Integration Clause Does Not Bar Extra-Contractual Fraud .......... 14

4. Sellers' Equitable Fraud Claim Is Well Pled .......... 16

5. Ameris's Remedy-Based Arguments Are Premature (and Mistaken) .......... 16

6. Sellers' Compliance with the SPA's Mandatory Forum Selection Provision Does Not Amount to Claim-Splitting .......... 18

7. Ameris's Judicial Estoppel Arguments Are Fundamentally Flawed .......... 19

8. Ameris's Breach of the SPA's Forum Selection Provision Is Actionable ........ 20

VII. CONCLUSION ........ 20

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Advanced Paving Servs., LLC. v. Metra Indus., Inc.*,
2026 WL 2620377 (Del. Super. Ct. Sept. 4, 2026)....17

*AgroFresh Inc. v. MirTech, Inc.*,
257 F. Supp. 3d 643 (D. Del. 2017)....17

*Allied Erecting & Dismantling Co. v. USX Corp.*,
249 F.3d 191 (3d Cir. 2001)....16

*Assured Guar. Mun. Corp. v. UBS Real Est. Secs., Inc.*,
2012 WL 3525613 (S.D.N.Y. Aug. 15, 2012)....18

*Berk v. Choy*,
607 U.S. 187 (2026)....10

*Black Horse Cap., LP v. Xstelos Hldgs., Inc.*,
2014 WL 5025926 (Del. Ch. Sept. 30, 2014)....15

*Bolton v. Ford Motor Co.*,
2024 WL 3328522 (D. Del. July 8, 2024)....10

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)....9

*Byrne v. Ameris Bank*,
No. 8:24-cv-01989-MWC-JDE (C.D. Cal.)....5

*Cavi v. Evolving Sys., Inc.*,
245 F. Supp. 3d 604 (D. Del. 2017)....17

*Cheffers v. Ideagen Software Inc.*,
2025 WL 2549411 (D. Del. Sept. 4, 2025)....13

*Cornell & Co. v. Occupational Safety & Health Review Comm'n*,
573 F.2d 820 (3d Cir. 1978)....7

*CrowdStrike, Inc. v. NSS Labs, Inc.*,
2018 WL 6716094 (D. Del. Dec. 21, 2018)....17

*Cureton v. NCAA*,
252 F.3d 267 (3d Cir. 2001)....7

*Dalton v. Saint Barnabas Med. Ctr.*,
2025 WL 2808156 (D.N.J. Sept. 30, 2025)....8

*Delawareans for Educ. Opportunity v. Carney*,
199 A.3d 109 (Del. Ch. 2018)....................17

*Evans v. Cantor Ins. Grp., LP*,
2022 WL 3908005 (D. Del. Aug. 30, 2022)....................14

*Foman v. Davis*,
371 U.S. 178 (1962)....................7

*Garfield v. Allen*,
277 A.3d 296 (Del. Ch. 2022)....................18

*Goureau v. Lemonis*,
2021 WL 1197531 (Del. Ch. Mar. 30, 2021)....................18

*Haney v. Blackhawk Network Hldgs., Inc.*,
2016 WL 769595 (Del. Ch. Feb. 26, 2016)....................16, 17

*Idearc Media LLC v. Glassman*,
2011 WL 570017 (E.D. Pa. Feb. 15, 2011)....................19

*Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*,
103 F.3d 1165 (3d Cir. 1997)....................17

*Johnson & Johnson v. Fortis Advisors LLC*,
352 A.3d 229 (Del. 2026)....................14

*Kronenberg v. Katz*,
872 A.2d 568 (Del. Ch. 2004)....................14

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
337 F.3d 314 (3d Cir. 2003)....................19

*Levy Family Invs., LLC v. Oars + Alps LLC*,
2022 WL 245543 (Del. Ch. Jan. 27, 2022)....................12, 13

*Long v. Wilson*,
393 F.3d 390 (3d Cir. 2004)....................7

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
243 F.3d 773 (3d Cir. 2001)....................19

*Mullin v. Balicki*,
875 F.3d 140 (3d Cir. 2017)....................8

*Namdar v. Fried*,
340 A.3d 1184 (Del. Ch. 2025)....................19, 20

*NoFar USA LLC v. Venter*,
2026 WL 266529 (D. Del. Feb. 2, 2026) .......... 14

*Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*,
2023 WL 12222694 (D. Del. Dec. 21, 2023) .......... 7

*Patrick E. Byrne, et al. v. Ameris Bank*,
No. 1:25-cv-01557-JLH (D. Del.) .......... 1

*Prairie Capital III, L.P. v. Double E Hldg. Corp.*,
132 A.3d 35 (Del. Ch. 2015) .......... 15

*Rheault v. Halma*,
2023 WL 8005318 (D. Del. Nov. 7, 2023) .......... 13

*Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller*,
311 F.3d 198 (3d Cir. 2002) .......... 11

*Roquette Freres v. SPI Pharma, Inc.*,
2009 WL 1444835 (D. Del. May 21, 2009) .......... 8

*Sapp v. Indus. Action Servs., LLC*,
2024 WL 3444633 (D. Del. July 17, 2024) .......... 13

*Shane v. Fauver*,
212 F.3d 113 (3d Cir. 2000) .......... 9

*Shareholder Representative Services LLC v. Albertsons Cos.*,
2021 WL 2311455 (Del. Ch. June 7, 2021) .......... 15

*Spectrum Brands, Inc. v. Tristar Products, Inc.*,
2026 WL 2322973 (D. Del. Aug. 11, 2026) .......... 10

*Talkdesk, Inc. v. DM Trans, LLC*,
2024 WL 2799307 (Del. Super. Ct. May 31, 2024) .......... 15

*Transp. Workers Union of Phila., Loc. 234 v. Se. Pa. Transp. Auth.*,
137 F.R.D. 220 (E.D. Pa. 1991) .......... 8

*Trifecta Multimedia Hldgs. Inc. v. WCG Clinical Servs. LLC*,
318 A.3d 450 (Del. Ch. 2024) .......... 12, 14, 15

*U.S. v. Children's Advocacy Center of Delaware*,
230 F. Supp. 3d 354 (D. Del. 2017) .......... 7, 8

*Winner Acceptance Corp. v. Return on Capital Corp.*,
2008 WL 5352063 (Del. Ch. Dec. 23, 2008) .......... 9, 10, 12

*Winters v. Patel*,
154 F. App'x 294 (3d Cir. 2005) ....................16

**Rules**

Fed. R. Civ. P. 8 ....................10, 17

Fed. R. Civ. P. 8(d)(2) ....................2, 17

Fed. R. Civ. P. 9(b) ....................1, 10, 11, 12

Fed. R. Civ. P. 12(b)(6) ....................20

Fed. R. Civ. P. 15(a)(2) ....................1, 7

## I. INTRODUCTION

Patrick E. Byrne, the Byrne Revocable Trust, and the Byrne Irrevocable Trust ("Sellers") state the following in support of their motion (the "Motion") for leave to file Counterclaims / Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure ("FRCP") 15(a)(2).

## II. NATURE AND STAGE OF PROCEEDINGS

Sellers filed their complaint against Ameris Bank ("Ameris") in December 2025, initiating the action *Patrick E. Byrne, et al. v. Ameris Bank*, No. 1:25-cv-01557-JLH (D. Del.) ("Sellers' Action").[1] On May 18, 2026, Sellers filed the FAC (D.I. 17), which Ameris moved to dismiss on July 23, 2026 (the "MTD") (D.I. 27). On August 24, 2026, this Court consolidated Sellers' Action with this action, which Ameris initiated against Sellers on February 20, 2026. D.I. 34. On September 2, 2026, this Court stayed briefing on the MTD pending resolution of the Motion.

## III. SUMMARY OF THE ARGUMENT

1. Sellers should be granted leave to file their SAC. Leave to amend is freely given, and the Motion is timely, made in good faith, and will not prejudice Ameris. The SAC rests largely on evidence from the California Action trial, which did not reach a verdict until June 11, 2026—after Sellers filed the FAC. The SAC adds no new parties or relief, and discovery has not begun.

2. The SAC is not futile because it adequately pleads that, to induce Sellers to execute the SPA, Ameris falsely represented that it intended to comply with the LTIP—the instrument Ameris proposed "to win" the Balboa transaction. FRCP 9(b) permits intent to be "alleged generally," and the standard is relaxed further here because Ameris's intent was peculiarly within its knowledge. The SAC sufficiently alleges Ameris knew before closing under the SPA that its

---

[1] Unless otherwise indicated, citations to docket entries refer to those in Sellers' Action and capitalized terms have the meanings ascribed to them in the proposed SAC submitted herewith.

accounting methodologies deviated substantially from the LTIP's required methodology, yet took no steps to prepare to perform; its LTIP preparer could not identify the LTIP's components; its CFO admitted it did not apply Balboa's CECL model, as required; it breached the LTIP at its first opportunity; and within two weeks after an LTIP cycle closed, its executives were strategizing about how charge-offs would reduce the LTIP accrual.

3. Delaware's anti-bootstrapping rule does not apply. Sellers sue as parties to the SPA, assert no claim for breach of the LTIP here, and their only SPA breach claim is unrelated to Ameris's fraud; there is no contract claim onto which the fraud claim is "bootstrapped." Sellers' fraud claims also fall within two well-recognized exceptions: the fraud caused distinct damage (Sellers' assumption of the SPA's indemnification obligations, for which they seek rescissory relief), and it was directed at inducing Sellers to sign the SPA.

4. The SPA's integration clause does not bar Sellers' fraud claims. A standard integration clause lacking clear anti-reliance language does not bar such claims, and the SPA contains no such language. Nor does the alleged fraud contradict the SPA's express terms; the LTIP is a separate instrument between different parties governing different obligations.

5. Sellers' equitable fraud claim is well pled because Sellers allege fraudulent conduct and seek equitable remedies (rescission or partial rescission) that are necessary, because the SPA's indemnification obligation is an ongoing liability of uncertain scope and Balboa is a unique asset.

6. Ameris's remedy-based arguments are mistaken. Tender of consideration is not an element of fraudulent inducement, partial rescission of Section 8 of the SPA would not require return of the $186 million Sellers received, and Sellers may plead alternative and inconsistent theories under FRCP 8(d)(2).

7. Sellers have not engaged in claim-splitting. The Byrne Trusts were not parties to

the California Action; that action concerned Byrne's employment, not fraudulent inducement of the SPA; and the relief sought here could not have been pursued in California because Section 10.8 of the SPA mandates a Delaware forum.

8. Judicial estoppel does not apply. Sellers' enforcement of Section 10.8 is consistent with their fraud claims because a forum-selection clause is enforceable notwithstanding fraudulent inducement of the underlying agreement; no court adopted Sellers' prior position because Ameris voluntarily dismissed the Superior Court Action; and Sellers have not acted in bad faith.

9. Ameris's breach of Section 10.8 is actionable. Ameris's fraud does not vitiate the SPA's forum-selection provision, and Sellers may recover the expenses they incurred defending the Superior Court Action in a foreclosed forum.

## IV. STATEMENT OF FACTS

### A. Sellers Select Ameris Because it Promises to Take Care of Balboa Employees

Byrne founded Balboa in 1988 and spent more than three decades building it into one of the nation's largest privately held finance companies. SAC ¶ 16. When he decided to sell Balboa in 2021, Byrne and the Byrne Trusts owned all of Balboa's shares, and many potential buyers were interested. *Id.* ¶¶ 16–17. But the purchase price was not Byrne's only concern. He wanted assurance that the employees who built Balboa would be fairly compensated after the sale. *Id.* ¶ 18. Ameris knew this. As its Chief Strategy Officer, Jim LaHaise, testified, Ameris understood that it had to account for Byrne's priorities "to win" the deal. *Id.*

The Balboa auction was competitive. Four bidders submitted indications of interest, and the two leading bids—including Ameris's—were within roughly one percent of each other on cash. SAC ¶ 25. Byrne asked the bidders three times to improve their offers. *Id.* Ameris's August 2, 2021, letter of intent raised its cash consideration and committed to an uncapped incentive pool

for Balboa's employees—the pool that ultimately became the LTIP. *Id.* No competitor matched it, and the LTIP is what set Ameris apart. *Id.* LaHaise later conceded that the parties traded six or seven drafts of the LTIP, that it "was part of the negotiations," and that it was "part of a benefit that the bank proposed to Mr. Byrne" to win the acquisition. *Id.* ¶ 23.

Byrne negotiated the LTIP's terms carefully. Employees would share in 35% of the amount by which Balboa's earnings before taxes ("EBT") exceeded annual Performance Goals for 2022 through 2024. SAC ¶ 19. To keep Ameris from moving the goalposts, the LTIP required EBT to be calculated using Balboa's own accounting methodology—the Pioneer 1Q21 Operating Model—and specified Key Assumptions. *Id.* ¶ 20. Byrne repeatedly pressed the point in his pre-closing discussions with Ameris, and Ameris executives (including LaHaise and Chief Financial Officer Nicole Stokes) repeatedly assured Byrne that Ameris would apply the Pioneer model and honor the LTIP after closing. *Id.* ¶¶ 21–22.

Ameris's pre-closing assurances shaped the deal. Ameris insisted that Sellers indemnify it for losses from certain litigation pending against Balboa. SAC ¶ 24. The underlying transactions had already been written down to zero, so Sellers had already absorbed that loss through the purchase price. *Id.* Byrne accepted the added indemnification exposure in Section 8 of the SPA only because he believed the LTIP would protect Balboa's employees. *Id.*; *see also* SAC ¶ 5.

On December 10, 2021, Ameris signed both the SPA with Sellers and the LTIP with Balboa's employees, including Byrne. SAC ¶¶ 2, 26. The SPA does not mention the LTIP; however, the two agreements were negotiated together, and the LTIP was an integral component of the acquisition. *Id.* ¶ 26. In Section 10.8 of the SPA, the parties agreed that this Court and the Court of Chancery would be the exclusive forums for any lawsuit arising out of the SPA. *Id.* ¶ 50.

### B. Ameris Never Prepares to Honor the LTIP—and Breaches It at the First Opportunity

Ameris's promises to comply with the LTIP were hollow from the start. Before signing, Ameris knew its accounting methodologies deviated substantially from the Pioneer model and that performing under the LTIP would require substantial accounting and bookkeeping changes. SAC ¶ 32. Ameris made none of them—not before closing, and not after. *Id.* ¶¶ 31, 33. The trial record in the California Action[2] shows how little Ameris did. The employee responsible for the LTIP calculations could not even describe the basic formula he used, could not identify the LTIP's components, and pulled data solely from Ameris's own reporting software. *Id.* ¶ 34. Ameris's CFO, Stokes, admitted Ameris did not apply Balboa's "established CECL model," as required, and Ameris's own accounting expert conceded Ameris did not follow the LTIP calculations. *Id.*

The first LTIP cycle closed on December 31, 2022. SAC ¶ 27. Ameris undercalculated EBT that very first year, shrinking the 2022 Incentive Pool, and later eliminated the 2023 pool altogether. *Id.*

Byrne objected to Ameris's violating the LTIP, but Ameris cast the disputes as ordinary accounting disagreements it would resolve in good faith. SAC ¶ 30. It did the opposite. When Byrne proposed six revisions to the 2023 calculation in January 2024, Stokes and Ameris's Controller analyzed which revisions would push EBT over the net income hurdle—and which would not. *Id.* ¶ 38. Over the next few days, Ameris personnel continued to analyze different variations of the calculations proposed by Byrne and assess the impact they would have on the net income threshold and LTIP calculation. *Id.* Ameris settled on a calculation that left EBT approximately $611,000 short of the threshold. *Id.* ¶ 39. Stokes replied: "Thank you!" *Id.* Because

[2] "California Action" refers to *Byrne v. Ameris Bank*, No. 8:24-cv-01989-MWC-JDE (C.D. Cal.).

Sellers had no access to Ameris's internal systems and Ameris kept promising compliance, Sellers could not have uncovered the scheme sooner. *Id.* ¶ 28. In June 2024, Ameris wrongfully fired Byrne based on his complaints about Ameris breaching the LTIP. *Id.* ¶ 40.

**C. A California Jury Finds Ameris Acted with Malice, Oppression, or Fraud**

Byrne sued Ameris in the California Action in his individual capacity as a former employee and asserted employment claims including wrongful termination, whistleblower retaliation, nonpayment of wages, and breach of his employment agreement and the LTIP. SAC ¶ 8 n.3. The Byrne Trusts were not parties to the California Action, and no claim to rescind the SPA was or could have been brought there because of the SPA's Delaware forum-selection clause. *Id.* After a June 2026 trial, the jury found that Ameris breached its contract with Byrne, willfully miscalculated the LTIP bonus pool, and "acted with malice, oppression, or fraud," and awarded Byrne $62,906,613 in punitive damages. *Id.* ¶¶ 8, 41–42. The court's June 29, 2026 Findings of Fact confirmed Ameris breached the LTIP by miscalculating the bonus pool for every performance period, and the court proceeded to enter a $79,548,170.80 judgment for Byrne that compensated him for the injuries he suffered as an employee—not the harm he and the Byrne Trusts suffered as parties induced into the SPA. *Id.* ¶ 8 n.3; ¶ 27 n.9.

**D. Ameris Sues Sellers in the Wrong Forum**

On May 7, 2025, Ameris sued Sellers to enforce purported indemnification rights under the SPA in Delaware Superior Court (the "Superior Court Action"), despite Section 10.8 of the SPA not permitting suit in the Superior Court. SAC ¶¶ 48, 50. Sellers were forced to respond, moving to dismiss for improper venue on December 18, 2025. *Id.* ¶ 49. Ameris then voluntarily dismissed the case on February 18, 2026, and re-filed here. *Id.* Sellers seek to recover the costs of defending that action as indemnifiable Losses under the SPA. *Id.* ¶¶ 51, 85–89.

## V. LEGAL STANDARDS

Leave to amend under FRCP 15(a)(2) shall be "freely given when justice so requires," and "amendments should be liberally granted." *Long v. Wilson*, 393 F.3d 390 (3d Cir. 2004). "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). Courts consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001). The non-moving party must demonstrate why leave should not be granted. *See Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*, 2023 WL 12222694, at *1 n.1 (D. Del. Dec. 21, 2023). The decision to grant leave is discretionary. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## VI. ARGUMENT

### A. The Motion Is Timely, Not in Bad Faith, and Will Not Prejudice Ameris

Sellers did not delay bringing this Motion, through which they seek to introduce new allegations based on testimony and other evidence from the recent trial in the California Action. Sellers filed their FAC on May 18, 2026. The California Action did not reach a jury verdict until June 11, 2026, and Ameris filed post-trial motions on August 21. The SAC incorporates: (i) sworn trial testimony confirming that the LTIP "was part of the negotiations" culminating in the SPA and that Ameris proposed the LTIP "to win" the transaction, SAC ¶ 23; (ii) the jury's verdict that Ameris breached the LTIP and acted "with malice, oppression, or fraud," *id.* ¶¶ 8, 41; and (iii) sworn trial testimony from the knowledgeable employees, demonstrating that Ameris failed to even take preparatory steps necessary to comply with the LTIP, *infra* Section VI.B.1. A finding of undue delay would be inappropriate because these new allegations rely primarily on information that "was not available to [Sellers] at the time the [FAC] was filed." *U.S. v. Children's Advocacy*

*Center of Delaware*, 230 F. Supp. 3d 354, 356 (D. Del. 2017); *see also Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (undue delay requires "delay that is protracted and unjustified[.]").

There is likewise no basis to conclude that the Motion is based on bad faith or dilatory motives. Bad faith requires deliberate dilatory conduct, such as a "protracted failure to file and proceed with [a] motion," *Transp. Workers Union of Phila., Loc. 234 v. Se. Pa. Transp. Auth.*, 137 F.R.D. 220, 224 (E.D. Pa. 1991), or a "tactical amendment, aimed at circumventing the court's prior ruling[.]" *Dalton v. Saint Barnabas Med. Ctr.*, 2025 WL 2808156, at *6 (D.N.J. Sept. 30, 2025); *see also Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835, at *5 (D. Del. May 21, 2009) (granting leave to amend and noting that nothing presented "suggests willful or deliberate conduct, the elements necessary for bad faith."). Here, the Motion seeks to add new allegations to cure purported deficiencies identified in Ameris's MTD, including by incorporating previously unknown (and highly relevant) trial evidence that was not available when the FAC was filed.[3]

Ameris will not be prejudiced by the filing of the SAC. The SAC does not add any new parties, new claims, or seek broader relief than the FAC;[4] it simply incorporates additional factual allegations to support Sellers' existing claims (including information not previously available). And this case is in its infancy. *See Children's Advocacy Center*, 230 F. Supp. 3d at 357 ("[B]ecause this matter has not begun discovery, there is no undue prejudice to defendant as a result of granting the motion. Defendant has not expended resources beyond filing responses to the initial complaint and subsequent motions.").

---

[3] While the SAC incorporates information from the California Action that is now public, Sellers' ability to rely on the full breadth of information supporting their claims remains limited because Ameris would not agree to Sellers' use of non-public information from the California Action (subject to the protective order entered here) until it is produced in discovery. *See* SAC ¶ 8 n.4.

[4] The SAC narrows the relief sought and claims asserted; it removes Sellers' request for reformation and one of their claims for equitable fraud.

### B. The Proposed Amendments Are Not Futile

In addition, the SAC is not futile.[5] Futility of amendment occurs "when the complaint, as amended, does not state a claim upon which relief can be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Therefore, the Court should accept all well-pleaded allegations as true and draw all reasonable inferences in favor of Sellers. *See Shane v. Fauver*, 212 F.3d 113, 115 (3d Cir. 2000).

#### 1. *The SAC Alleges Ameris Falsely Represented that it Intended to Comply with the LTIP to Induce Execution of the SPA*

Ameris contends Sellers' FAC fails to plead ***any*** misrepresentations relating to the SPA, D.I. 28 at 11, and further fails to plead "promissory fraud" under Delaware law's heightened standard for pleading such a claim in Delaware's courts, D.I. 28 at 14-15. Both arguments fail.

Sellers allege that, to induce Sellers to execute the SPA, Ameris falsely represented that it intended to comply with the LTIP—the instrument Ameris itself proposed in order to win the Balboa auction. SAC ¶ 45. The SAC identifies these misrepresentations—and their relation to the SPA—by identifying the Ameris representatives who made them, the substance of their assurances, and the pre-closing calls and meetings in which they were made. *Id.* ¶¶ 21–25, 53–54. The fact the misrepresentations implicate Ameris's "intent to comply with the LTIP" does not mean they "cannot possibly give rise to a claim for fraudulent inducement of the SPA." D.I. 28 at 9. In fact, that is the very claim they support.

Ameris claims that Sellers must satisfy Delaware's heightened "specific facts" pleading standard for promissory fraud claims in state court. *See* D.I. 28 at 14-15; *see also Winner*

[5] Sellers do not address every argument Ameris raised in its MTD that it may assert as grounds for a futility finding, without waiver of Sellers' right to address any such argument in the reply in support of the Motion.

*Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *10 (Del. Ch. Dec. 23, 2008) (articulating pleading standard applicable to promissory-fraud allegations). This Delaware-law standard—under which a claimant must plead "specific facts that lead to a reasonable inference that the promissor had no intention of performing at the time the promise was made," supporting fraudulent intent, *Winner Acceptance Corp.*, 2008 WL 5352063, at *10—cannot supplant FRCP 9(b), which provides that "intent … and other conditions of a person's mind may be alleged generally." The U.S. Supreme Court recently confirmed this in *Berk v. Choy*, explaining that "a valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test," so long as the federal rule "answers the question in dispute" and does not "exceed[] statutory authorization or Congress's rulemaking power." 607 U.S. 187, 192 (2026) (citation modified) (holding that FRCP 8 displaced Delaware statute requiring affidavit of merit from expert to initiate medical negligence lawsuit), *followed by*, *Spectrum Brands, Inc. v. Tristar Products, Inc.*, 2026 WL 2322973, at *6 (D. Del. Aug. 11, 2026) (holding FRCP 9(b) displaces any "extra-heightened pleading requirement" under Delaware law for fraudulent transfer claims).

Here, FRCP 9(b) plainly answers the same question as Delaware's common-law standard; namely, how specifically a claimant must allege a speaker's fraudulent intent or state of mind. Accordingly, FRCP 9(b)'s relaxed standard for state-of-mind pleading controls. *Berk*, 607 U.S. at 192; *Spectrum Brands*, 2026 WL 2322973, at *6. Under this standard, knowledge may be averred generally, and Sellers need only "plead the events which they claim give rise to an inference of knowledge."[6] In fact, the pleading standard is relaxed even further because Ameris's undisclosed

[6] *Bolton v. Ford Motor Co.*, 2024 WL 3328522, at *10 (D. Del. July 8, 2024) (quoting *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987)).

intent not to perform the LTIP constitutes information "peculiarly within [Ameris's] knowledge or control." *Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller*, 311 F.3d 198, 216 (3d Cir. 2002).

The SAC readily clears the bar imposed by FRCP 9(b) (and would survive dismissal even if this Court were to apply Delaware's heightened promissory-fraud standard). It incorporates additional particularized allegations regarding Ameris's conduct before and shortly after executing the SPA that support the inference that Ameris never intended to perform its obligations under the LTIP. Among other things, the SAC incorporates testimony and evidence from the California Action trial and alleges that, prior to closing, Ameris "did not take ***any*** steps prior to closing to implement the bookkeeping procedures … [or] the financial accounting methodologies that would be necessary to perform under the LTIP." SAC ¶ 33. The SAC also identifies testimony concerning Ameris's actual implementation of the LTIP that supports this inference. *Id.* ¶ 34. The employee responsible for preparing the LTIP calculations could not even identify the LTIP components, *id.*, and Ameris's CFO admitted that Ameris did not apply Balboa's "established CECL model," as required under the LTIP, *id.* Ameris's failure to take any preparatory steps is especially revealing because Ameris knew, prior to entering into the SPA, that its existing accounting methodologies deviated substantially from the required methodology for the LTIP calculations (and, as a result, substantial accounting and bookkeeping changes were necessary). *Id.* ¶ 32.

In addition to failing to implement ***any*** of the bookkeeping procedures ***or*** accounting methodologies necessary to comply with the LTIP, Ameris also breached the LTIP at its very first opportunity. SAC ¶ 27. Against the backdrop of the competitive bidding process preceding Balboa's acquisition, Ameris's failure to even ***prepare to perform*** under the LTIP reflects its pre-SPA intent not to so perform. It is reasonable to infer that Ameris proposed the LTIP as nothing more than a bidding tactic to "win" the transaction, without ever intending to honor it. *Id.* ¶ 25.

The SAC also incorporates allegations regarding post-closing conduct that further supports the inference that Ameris never intended to perform under the LTIP. Evidence presented in the California Action reveals that, less than two weeks after an LTIP cycle closed, Ameris was scheming about how to engineer the LTIP calculation by "cherry-picking" certain factors. SAC ¶ 29 (referencing internal correspondence "strategizing" about "how certain charge offs would reduce the LTIP accrual"); *see also id.* ¶¶ 37–39 (outlining additional internal correspondence revealing Ameris's consistent efforts to downwardly manipulate LTIP calculations). These allegations are more than sufficient under FRCP 9(b) or Delaware's heightened pleading standard. *See, e.g.*, *Trifecta Multimedia Hldgs. Inc. v. WCG Clinical Servs. LLC*, 318 A.3d 450, 465 (Del. Ch. 2024) (refusing to dismiss fraud claim for lack of scienter where plaintiff alleged that post-closing, defendant immediately took steps to undermine plaintiff's business); *Winner*, 2008 WL 5352063, at *10 (finding promissory fraud sufficiently pled where investments and defendants "disappeared shortly after" final lease payment and defendants failed to "make good on virtually any of their obligations").

2. *Delaware's Anti-Bootstrapping Rule Does Not Apply*

Contrary to Ameris's contention (D.I. 28 at 9-11), the anti-bootstrapping rule—i.e., "one cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations"[7]—does not apply here. Sellers' claims in the SAC arise in their capacity as parties to the SPA, ***not*** as LTIP participants or Ameris employees (indeed, the Byrne Trusts were never either one). SAC ¶ 8 n.3. The SPA governed a corporate transaction, whereas the LTIP is an agreement between Ameris and its employees for employment-based payments. Sellers assert no claim for breach of the LTIP in this Court—and

[7] *Levy Family Invs., LLC v. Oars + Alps LLC*, 2022 WL 245543, at *8 (Del. Ch. Jan. 27, 2022).

their only breach of SPA claim is unrelated to the gravamen of the fraud. Because "there is no breach claim on which to 'bootstrap' the fraud claim," the anti-bootstrapping rule does not apply. *Levy Family Invs.*, 2022 WL 245543, at *8 (citation modified). Ameris itself recognizes "bootstrapping is not directly applicable here in the absence of a breach of contract claim," D.I. 11 at 17, yet Ameris relies on caselaw distinguishable on that very basis. *See, e.g.*, *Cheffers v. Ideagen Software Inc.*, 2025 WL 2549411, at *7-8 (D. Del. Sept. 4, 2025); *Sapp v. Indus. Action Servs., LLC*, 2024 WL 3444633, at *4 (D. Del. July 17, 2024).

In addition, Sellers' fraud claims fall squarely within the recognized exceptions to the anti-bootstrapping rule. First, the rule "does not prevent parties from bringing a fraud claim if … damages for [the] fraud claim may be different from [the] breach of contract claim." *Levy Family Invs.*, 2022 WL 245543, at *8 (citation modified). Here, the fraud caused a different injury than the breach of the LTIP; whereas the fraud caused Sellers to enter into the SPA and assume the indemnification obligations set forth therein, *see* SAC ¶ 59, the breach of the LTIP caused Byrne lost wages as an employee—an injury addressed in the California Action. Because Sellers assert fraud damages (and seek rescissory relief) distinct from the harm caused by the LTIP, the anti-bootstrapping rule does not preclude their fraud claims. *See Levy Family Invs.*, 2022 WL 245543, at *9 (noting request for "rescissory damages" in refusing to preclude fraud claims).

Second, the anti-bootstrapping rule does not preclude the fraud claims Sellers assert here—based on fraudulent "conduct [that] occurs prior to the execution of the contract and thus with the goal of inducing the [claimant's] signature and willingness to close on the transaction." *Levy*, 2022 WL 245543, at *8 (citation modified); *see also Rheault v. Halma*, 2023 WL 8005318, at *5 (D. Del. Nov. 7, 2023) ("[T]he bootstrapping doctrine does not apply when the fraud complaint is directed to misrepresentations leading up to an agreement …."). The SAC confirms this exception

applies here with specific allegations of Ameris's awareness that the LTIP was necessary "to win" the transaction, SAC ¶ 23, and that Ameris falsely represented that it intended to comply with the LTIP—an "integral component" of the overall transaction, *id.* ¶ 26—for the specific purpose of inducing entry into the SPA. *Id.*; *see also Evans v. Cantor Ins. Grp., LP*, 2022 WL 3908005, at *3 n.8 (D. Del. Aug. 30, 2022) (holding that anti-bootstrapping rule did not preclude fraud claim where plaintiff "alleges fraud in the inducement to sign the [induced contract], not in the performance of the contract").

3. *The SPA's Integration Clause Does Not Bar Extra-Contractual Fraud*

The SPA's integration clause does not bar Sellers' extra-contractual fraud claims. As the Delaware Supreme Court recently reiterated in *Johnson & Johnson v. Fortis Advisors LLC*, "standard integration clauses … will not relieve a party of its oral and extra-contractual fraudulent representations." 352 A.3d 229, 273 (Del. 2026); *see also NoFar USA LLC v. Venter*, 2026 WL 266529, at *3 (D. Del. Feb. 2, 2026) ("Delaware courts have not given effect to so-called merger or integration clauses that do not clearly state that the parties disclaim reliance upon extra-contractual statements." (citation modified)). An extra-contractual fraud claim will only be precluded where a contract contains language that "add[s] up to a clear anti-reliance clause." *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004). Because standard integration clauses do not contain such language, they generally will not bar an extra-contractual fraud claim. *See Johnson & Johnson*, 352 A.3d at 273; *Trifecta Multimedia Hldgs. Inc.*, 318 A.3d at 465. And here, neither the SPA's integration clause nor any other provision contains anti-reliance language that meets the controlling *Johnson & Johnson* standard.

To evade application of this general principle, Ameris points to pre-*Johnson & Johnson*, inapposite case law (from a trial court) involving extra-contractual representations that

***contradicted express terms*** of the at-issue contract. D.I. 28 at 12-13.[8] In *Shareholder Representative Services LLC v. Albertsons Cos.*, 2021 WL 2311455 (Del. Ch. June 7, 2021), the plaintiff sought to contradict a heavily negotiated merger agreement which granted the buyer "the exclusive right to make all business and operational decisions" regarding the acquired business "in its sole and absolute discretion." 2021 WL 2311455, at *13. These express contractual terms were directly inconsistent with the "alleged oral misrepresentations made during negotiations, including that [buyer] promised to give … [seller's] management team broad latitude in setting compensation." *Id.* at *11. The Court of Chancery held that the integration clause was sufficient to preclude justifiable reliance on the alleged misrepresentations because they amounted to "parol evidence that would vary the extant terms in the subsequent integrated writings." *Id.* at *12 (quoting *Black Horse Cap., LP v. Xstelos Hldgs., Inc.*, 2014 WL 5025926, at *24 (Del. Ch. Sept. 30, 2014)); *see also Trifecta Multimedia Hldgs. Inc.*, 318 A.3d at 466-67.

Here, unlike in *Albertsons*, Ameris's alleged fraud—its undisclosed intent not to perform the LTIP—does not contradict express terms of the SPA.[9] The LTIP is not part of the SPA, it is not referenced in the SPA, it is between different parties, and it governs different obligations (employee compensation). Ameris's fraud thus falls far outside the scope of the SPA's integration clause. SPA § 10.5 (superseding only agreements "with respect to the subject matter hereof").

---

[8] In addition to these cases, Ameris also cites to *Prairie Capital III, L.P. v. Double E Hldg. Corp.*, 132 A.3d 35 (Del. Ch. 2015), which is distinguishable because (unlike here) the at-issue contract contained express anti-reliance language.

[9] The remaining cases cited by Ameris are inapposite for the same reason; they each involved alleged promises that contradicted, or would have varied, the express terms of the integrated writing. *Black Horse*, 2014 WL 5025926, at *25 (noting that fraud claim "so plainly conflicts with [contractual] language" that allowing it would "render the integration clauses contained in [the contracts] mere surplusage"); *Talkdesk, Inc. v. DM Trans, LLC*, 2024 WL 2799307, at *9-11 (Del. Super. Ct. May 31, 2024) (dismissing fraud claim that sought to "avoid the deal [claimant] made in favor of the deal it now wishes it made" (citation modified)).

4. *Sellers' Equitable Fraud Claim Is Well Pled*

Under Delaware law, a plaintiff can state a claim for equitable fraud wherever "one of the two fundamental sources of equity jurisdiction exist: (1) an equitable right founded upon a special relationship over which equity takes jurisdiction, or (2) where equity affords its special remedies, e.g., rescission, or cancellation[.]" *Haney v. Blackhawk Network Hldgs., Inc.*, 2016 WL 769595, at *10 (Del. Ch. Feb. 26, 2016). In *Haney*, where the underlying agreement was between "sophisticated parties" who had "engaged in an arm's length transaction," the Court of Chancery rejected an attempt to dismiss an equitable fraud claim because the plaintiff: (i) had adequately pled facts supporting a reasonable inference that the defendant "engaged in fraudulent conduct"; and (ii) sought "equitable remedies[.]" *Id.* at *10.

As in *Haney*, Sellers adequately plead that Ameris engaged in fraudulent conduct that requires an equitable remedy (rescission or partial rescission) because the harms Sellers suffered cannot be remedied by monetary damages alone.[10] The indemnification obligation under the SPA is an ongoing liability of uncertain scope, making it impossible to calculate a damages figure that would fully compensate Sellers. SAC ¶ 47. Additionally, Balboa is a unique asset whose present and future value is not readily ascertainable, thus necessitating equitable relief. *Id.* ¶ 48.

5. *Ameris's Remedy-Based Arguments Are Premature (and Mistaken)*

Ameris's arguments regarding Sellers' ability to obtain specific ***remedies*** have no bearing on the sufficiency of Sellers' allegations. D.I. 28 at 14-15.[11] Regardless, the SAC pleads sufficient

---

[10] SAC ¶ 47; *supra* Section VI.B.1 (discussing alleged fraud and why it is actionable); *see Haney*, 2016 WL 769595, at *10 (refusing to dismiss equitable fraud claim because plaintiff adequately alleged fraudulent conduct and "seeks multiple equitable remedies").

[11] The summary-judgment decisions on which Ameris relies do not inform the pleading-stage sufficiency of the SAC. *See Winters v. Patel*, 154 F. App'x 294, 297-98 (3d Cir. 2005); *Allied Erecting & Dismantling Co. v. USX Corp.*, 249 F.3d 191, 199 (3d Cir. 2001).

facts to support Sellers' request for rescission, partial rescission, and rescissory damages.

Sellers' failure to plead that they are "ready, willing, and able" to repay the $186 million received under the SPA does not support dismissal of their fraud claims on the pleadings. D.I. 28 at 15. Although tendering consideration may be a condition of ultimately being ***awarded*** rescission, it is not a condition of ***pleading*** fraudulent inducement or equitable fraud. *See AgroFresh Inc. v. MirTech, Inc.*, 257 F. Supp. 3d 643, 662 (D. Del. 2017) (reciting elements required to prove fraudulent inducement); *Haney*, 2016 WL 769595, at *10. Ameris's argument also ignores Sellers' request for ***partial*** rescission of the indemnification provisions in Section 8 of the SPA, a result which would not require returning all consideration Ameris paid. SAC ¶ 64.

Further, Ameris cannot obtain dismissal of Sellers' fraud claim simply because one of the remedies sought by Sellers purportedly is inconsistent with its claim for breach of the SPA's venue provision (it is not inconsistent, *see infra* Section VI.B.8). It is well-established that a plaintiff may "plead alternative theories of recovery" and a court "need not 'wrestle at the pleading stage how one claim might interact with another.'" *Advanced Paving Servs., LLC. v. Metra Indus., Inc.*, 2026 WL 2620377, at *4 (Del. Super. Ct. Sept. 4, 2026) (citation omitted); *see also Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997) (FRCP 8 "permits inconsistency in both legal and factual allegations"); *CrowdStrike, Inc. v. NSS Labs, Inc.*, 2018 WL 6716094, at *3 (D. Del. Dec. 21, 2018) (same); *Cavi v. Evolving Sys., Inc.*, 245 F. Supp. 3d 604, 605 (D. Del. 2017) (holding that a plaintiff may "pursue a multitude of conflicting and possibly unnecessary claims.").

Sellers need not choose between remedies at the pleadings stage. *See, e.g.*, FRCP 8(d)(2); *Delawareans for Educ. Opportunity v. Carney*, 199 A.3d 109, 178 (Del. Ch. 2018) ("Whether and what kind of remedy issues should be addressed at a future date"); *Assured Guar. Mun. Corp. v.*

*UBS Real Est. Secs., Inc.*, 2012 WL 3525613, at *7 (S.D.N.Y. Aug. 15, 2012) (same); *Garfield v. Allen*, 277 A.3d 296, 307 (Del. Ch. 2022) ("The pleadings are not the right time for the court to determine whether success on one claim might obviate the need for another.").

6. *Sellers' Compliance with the SPA's Mandatory Forum Selection Provision Does Not Amount to Claim-Splitting*

The rule against claim-splitting is designed to "prevent burdening the same defendant with duplicative proceedings in different courts brought by the same plaintiff based on different causes of action arising out of a common underlying nucleus of facts." *Goureau v. Lemonis*, 2021 WL 1197531, at *8 (Del. Ch. Mar. 30, 2021); OB at 17. None of these predicates are present.

First, two of the Sellers (the Byrne Trusts) were not parties to the California Action.

Second, this action implicates a different core nucleus of facts (implicating different duties and distinct time periods) than the California Action. The California Action involved multiple claims relating to Byrne's status as a former employee, including wrongful discharge, nonpayment of wages, and breach of the LTIP ***after closing***. SAC ¶ 41. Sellers' claims in this action relate to a different instrument (the SPA) and require proof of facts that were not necessary to establish the claims in the California Action—e.g., fraudulent intent as of December 2021, justifiable reliance on Ameris's ***pre-closing*** representations and fraudulent inducement to enter the SPA. *Id.* ¶ 8 n.3.

Third, this action seeks relief that could not have been sought in the California Action—i.e., rescission of the SPA and damages from the Superior Court Action—because the claims seeking that relief could not have been brought in California. Section 10.8 of the SPA designates certain Delaware courts as the exclusive forums for "any Action arising out of" the SPA. Sellers' compliance with a mandatory forum selection provision does not amount to claim-splitting.

7. *Ameris's Judicial Estoppel Arguments Are Fundamentally Flawed*

Ameris's estoppel arguments are contrary to the law and mischaracterize Byrne's prior positions. D.I. 28 at 18. A party asserting judicial estoppel must show (1) that the to-be-estopped party took "two positions that are ***irreconcilably inconsistent***", (2) that party "***changed [their] position in bad faith*** – i.e., with the intent to play fast and loose with the court," and (3) the district court's application must be "tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (emphasis added); *Idearc Media LLC v. Glassman*, 2011 WL 570017, at *2 (E.D. Pa. Feb. 15, 2011). Moreover, judicial estoppel is inappropriate where an initial claim was not accepted or adopted by a court. *See Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 778 (3d Cir. 2001). Ameris fails to meet its burden to show these prerequisites.

First, Sellers' arguments regarding Section 10.8's enforceability are not irreconcilably inconsistent with their fraud claims. Under Delaware law, forum selection provisions are not vitiated by fraud unless the alleged fraud ***goes directly to the forum selection provision***. That is because a forum selection clause "operates as a mini-contract (the forum selection contract) within a larger contract (the container contract)." *Namdar v. Fried*, 340 A.3d 1184, 1206 n.83 (Del. Ch. 2025) (citation omitted). "A party might have induced the counterparty to execute the container contract through fraud, ***but that would not affect the forum selection contract unless the fraud went directly to the latter contract***." *Id.* (emphasis added). "A court therefore can enforce a forum selection clause notwithstanding the alleged fraudulent inducement of the container contract." *Id.*

Second, Ameris voluntarily dismissed the Superior Court Action before the court relied upon Sellers' prior characterization of the SPA. *See Montrose*, 243 F.3d at 782 ("[J]udicial estoppel

is inappropriate unless the earlier position was accepted by a court or agency.").

Third, Sellers have not acted with bad faith and Ameris doesn't attempt to show otherwise.

Finally, Ameris's estoppel arguments (like their remedies arguments) also ignore that Sellers are entitled to plead in the alternative. If Sellers obtain partial rescission of the SPA, then there can be no doubt as to the continued enforceability of its forum selection provision. Here, again, Ameris is trying to cut off Sellers' claims at the pleadings stage because of potential (or imagined) inconsistencies in the relief sought in Sellers' complaint. These election-of-remedies issues do not present a pleadings-stage obstacle. *See supra* Section VI.B.5.

8. *Ameris's Breach of the SPA's Forum Selection Provision Is Actionable*

The fact that Sellers seek rescission of the SPA does not absolve Ameris of liability for breaching it. As noted above, fraud with respect to the SPA ***as a whole*** does not vitiate either party's obligation to comply with the forum selection provision in Section 10.8. *Supra* Section VI.B.7.[12] Sellers specifically allege the harm they suffered as a result of the breach. SAC ¶ 85. Sellers were forced to litigate in a foreclosed forum, so they are entitled to recover the expenses they incurred there. *Namdar*, 340 A.3d at 1203 ("The expenses incurred in the foreclosed forum provide the measure of damages the non-breaching party suffered from the breach of the contractual right not to be sued there.").

## VII. CONCLUSION

For the reasons set forth above, Sellers respectfully request the Court grant their Motion and direct Ameris to answer the SAC.[13]

---

[12] As Sellers previously explained, Section 8.4(c) does not override Ameris's obligations under Section 10.8. D.I. 29-1 at 10-12.

[13] The futility standard mirrors the standard governing a motion to dismiss under FRCP 12(b)(6).

Dated: September 30, 2026

Respectfully submitted,

REED SMITH LLP

*/s/ Benjamin P. Chapple*

Benjamin P. Chapple (No. 5871)
John T. Miraglia (No. 6682)
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500
bchapple@reedsmith.com
jmiraglia@reedsmith.com

*Attorneys for Defendants/Counterclaim Plaintiffs Patrick E. Byrne, The Patrick E. Byrne Revocable Trust U/T/A Dated February 23, 2001, and The Patrick E. Byrne Irrevocable Trust U/T/A Dated July 22, 2021*

OF COUNSEL:

Matthew T. Sessions (*pro hac vice*)
Stacey A. Villagomez (*pro hac vice*)
ALLEN MATKINS
2010 Main Street, 8th Floor
Irvine, CA 92614
(949) 553-1313
msessions@allenmatkins.com
svillagomez@allenmatkins.com