**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMERIS BANK,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>PATRICK E. BYRNE, THE PATRICK E. BYRNE REVOCABLE TRUST U/T/A DATED FEBRUARY 23, 2001, and THE PATRICK E. BYRNE IRREVOCABLE TRUST U/T/A DATED JULY 22, 2021,<br><br>Defendants/Counterclaim Plaintiffs. | C.A. No. 1:26-cv-00190-JLH<br><br>(Consolidated) |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE COUNTERCLAIMS/SECOND AMENDED COMPLAINT**

SMITH, KATZENSTEIN & JENKINS LLP

Elizabeth Wilburn Joyce (DE Bar #3666)
Megan Ix Brison (DE Bar #6721)
Lauren A. Black (DE Bar #7048)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
ewj@skjlaw.com
mib@skjlaw.com
lab@skjlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant Ameris Bank*

OF COUNSEL:

Benjamin J. Razi
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
brazi@cov.com

Robert C. Gianchetti
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001
(212) 841-1000
rgianchetti@cov.com

Dated: November 16, 2026

# TABLE OF CONTENTS

**Page**


STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS .................................... 1

SUMMARY OF THE ARGUMENT ........................................................................... 3

STATEMENT OF FACTS ........................................................................................ 4

A. Pursuant to the SPA, Defendants Agree to Indemnify Ameris, Disclaim Extracontractual Representations, and Release Pre-Closing Claims. .................... 4

B. Ameris Allegedly Breaches the LTIP After Executing the SPA. .......................... 6

C. Byrne Sues Ameris in California, Asserting Breach of the LTIP. ......................... 7

D. Ameris Sues Defendants for Failing to Indemnify Ameris as Required by the SPA, and Defendants File This Retaliatory Action. ....................................... 7

ARGUMENT ......................................................................................................... 8

I. THE PROPOSED SECOND AMENDED COMPLAINT IS FUTILE. ........................... 8

A. Defendants Fail to State a Claim for Fraudulent Inducement. .............................. 9

1. Defendants' fraud claim is a bootstrapped claim for breach of contract. ....................................................................................... 9

2. Defendants do not identify any misrepresentations concerning the SPA. ............................................................................................. 11

3. Defendants' claim for fraudulent inducement is barred by the SPA. ....... 11

4. Defendants fail to allege fraud based on Ameris's intent to comply with the LTIP in the future. .............................................................. 15

5. Defendants are not entitled to rescission of the SPA. .............................. 17

6. Defendants' alternative claim for "equitable fraud" likewise fails. .......... 18

B. Defendants Cannot Split Their LTIP Claims in Two Different Forums. ............ 19

C. Defendants Fail to State a Claim for Breach of Contract or Indemnification. ................................................................................. 19

II. EQUITABLE FACTORS WEIGH AGAINST FURTHER AMENDMENT. ................ 20

CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adage Invs. Partners, LLC v. Bounce AI, Inc.*,
2026 WL 2583139 (Del. Super. Aug. 27, 2026)....16

*AFN, Inc. v. Schlott, Inc.*,
798 F. Supp. 219 (D.N.J. 1992)....18

*AJZN, Inc. v. Yu*,
2015 WL 331937 (D. Del. Jan. 26, 2015)....16

*Allied Erecting & Dismantling Co. v. USX Corp.*,
249 F.3d 191 (3d Cir. 2001)....17

*Am. Life Ins. Co. v. Parra*,
187 F. Supp. 2d 203 (D. Del. 2002)....18

*Andor Pharms., LLC v. Lannett Co.*,
2024 WL 1855112 (Del. Super. Apr. 29, 2024)....18

*Berk v. Choy*,
607 U.S. 187 (2026)....16

*Black Horse Cap., LP v. Xstelos Holdings, Inc.*,
2014 WL 5025926 (Del. Ch. Sept. 30, 2014)....12, 13

*Cato Cap. LLC v. Hemispherx Biopharma, Inc.*,
70 F. Supp. 3d 607 (D. Del. 2014)....15

*Cheffers v. Ideagen Software Inc.*,
2025 WL 2549411 (D. Del. Sept. 4, 2025)....10

*Cornell Glasgow, LLC v. La Grange Props. LLC*,
2012 WL 2106945 (Del. Super. June 6, 2012)....16

*Daugherty v. Dondero*,
2023 WL 461112 (Del. Ch. Jan. 27, 2023)....19

*Emerson v. Mezzion Int'l, LLC*,
2021 WL 4476925 (D. Del. Sept. 30, 2021)....16

*Evans v. Cantor Ins. Grp., LP*,
2022 WL 3908005 (D. Del. Aug. 30, 2022)....11, 12

*Fortis Advisors LLC v. Dialog Semiconductor PLC*,
2015 WL 401371 (Del. Ch. Jan. 30, 2015)....18, 19

*Goureau v. Lemonis*,
2021 WL 1197531 (Del. Ch. Mar. 30, 2021)....................19

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
615 F.3d 159 (3d Cir. 2010)....................8, 9

*Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*,
789 F. Supp. 2d 622 (E.D. Pa. 2011)....................18

*Hopkins v. Concorde Career Colls., Inc.*,
2016 WL 1238775 (D. Del. Mar. 29, 2016)....................16

*Iotex Commc'ns, Inc. v. Defries*,
1998 WL 914265 (Del. Ch. Dec. 21, 1998)....................9

*Jhaveri v. K1 Inv. Mgmt. LLC*,
2025 WL 1779507 (Del. Ch. June 27, 2025)....................14

*Johnson & Johnson v. Fortis Advisors LLC*,
352 A.3d 229 (Del. 2026)....................13

*Kostyszyn v. Martuscelli*,
2014 WL 3510676 (Del. Ch. July 14, 2014)....................17

*Levy Family Invs., LLC v. Oars + Alps LLC*,
2022 WL 245543 (Del. Ch. Jan. 27, 2022)....................10, 11

*LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*,
2018 WL 1559936 (Del. Ch. Mar. 28, 2018)....................19

*MERA USA, LLC v. MCS Burbank, LLC*,
2026 WL 2547077 (Del. Ch. Aug. 28, 2026)....................14

*Murphy Marine Servs., Inc. v. Dole Fresh Fruit Co.*,
2022 WL 610755 (D. Del. Jan. 13, 2022)....................16

*Nofar USA LLC v. Venter*,
2026 WL 266529 (D. Del. Feb. 2, 2026)....................14

*Prairie Cap. III, L.P. v. Double E Holding Corp.*,
132 A.3d 35 (Del. Ch. 2015)....................12

*PureShares, LLC v. Zimnisky*,
2025 WL 606903 (D. Del. Feb. 25, 2025)....................9, 10

*PVP Aston, LLC v. Fin. Structures Ltd.*,
2023 WL 2728775 (Del. Super. Mar. 31, 2023)....................19

*Roux v. Okhandiar*,
2026 WL 884133 (D. Del. Mar. 31, 2026) ....................16

*Sapp v. Indus. Action Servs., LLC*,
2024 WL 3444633 (D. Del. July 17, 2024) ....................15, 16

*United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*,
769 F.3d 837 (3d Cir. 2014)....................8

*Seven Invs., LLC v. AD Cap., LLC*,
32 A.3d 391 (Del. Ch. 2011)....................14

*Shane v. Fauver*,
213 F.3d 113 (3d Cir. 2000)....................20

*S'holder Representative Servs. LLC v. Albertsons Cos.*,
2021 WL 2311455 (Del. Ch. June 7, 2021)....................12, 13

*Sun Life Assurance Co. of Can. v. Berck*,
719 F. Supp. 2d 410 (D. Del. 2010)....................18

*Talkdesk, Inc. v. DM Trans, LLC*,
2024 WL 2799307 (Del. Super. May 31, 2024) ....................12

*Toner v. Allstate Ins. Co.*,
829 F. Supp. 695 (D. Del. 1993)....................17

*Transdev on Demand, Inc. v. Blackstreet Inv. Holdings, LLC*,
2020 WL 7027538 (Del. Ch. Nov. 30, 2020) ....................9, 16

*Univiversal Enter. Grp., L.P. v. Duncan Petroleum Corp.*,
2013 WL 3353743 (Del. Ch. July 1, 2013)....................19

*Vatidis v. Trimble, Inc.*,
2019 WL 3546693 (D. Del. Aug. 5, 2019) ....................9

*vMedex, Inc. v. TDS Operating, Inc.*,
2020 WL 4925512 (D. Del. Aug. 21, 2020) ....................15

*WIA Holdings LLC v. Scottish Am. Cap. LLC*,
2026 WL 1204494 (Del. Ch. Jan. 20, 2026)....................11

*Winters v. Patel*,
154 F. App'x 294 (3d Cir. 2005) ....................17, 18

*Yetter v. Wise Power Sys., Inc.*,
929 F. Supp. 2d 329 (D. Del. 2013)....................18

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................................................9, 16

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

Ameris Bank ("Ameris") has twice moved to dismiss Defendants' claims for fraudulent inducement and breach of contract. In response, Defendants have sought to prolong indefinitely a ruling by this Court on the viability of their claims and keep a moving target for Ameris to shoot at. But despite being permitted to seek leave to file yet another amended pleading, Defendants still come nowhere close to stating a claim. Defendants' putative Second Amended Complaint/Counterclaims ("Second Amended Complaint" or "SAC") (D.I. 48, Ex. 1) fails to fix any of the fatal pleading deficiencies previously identified by Ameris, and introduces new ones. Defendants' motion ("Motion" or "Mot.") (D.I. 48 and D.I. 49) should be denied, and their claims dismissed as a matter of law.

Though the putative SAC represents Defendants' attempted third pleading, the gravamen of their claims remains the same. As before, Defendants assert that, to induce Defendants to execute the Stock Purchase Agreement ("SPA") and agree to indemnification of Ameris as part of the SPA, Ameris "falsely represented that it intended to comply with the LTIP," a separate alleged contract that, according to Defendants, "is not part of the SPA," "is not referenced in the SPA," "is between different parties," and "governs different obligations." Mot. 1, 15. Defendants argue that Ameris's alleged breach of the LTIP following execution of the SPA entitles Defendants to rescind the SPA or, at minimum, their indemnification obligation thereunder. Defendants' brazen scheme to eliminate Ameris's critical indemnification rights should be rejected.

Throughout the Motion, Defendants talk out of both sides of their mouth. When attempting to link the SPA and LTIP together, they declare that the LTIP was an "integral component" of the "corporate transaction" "governed" by the SPA; when seeking to distance the LTIP from the terms of the SPA, Defendants insist that the LTIP is "a separate instrument between different parties

governing different obligations." *Id.* at 2, 4, 12. The common thread, however, is that Defendants are attempting to "bootstrap" a claim for breach of the ***LTIP***—which Byrne is litigating and brought to verdict in California—into a claim for fraudulent inducement of the ***SPA***, a separate contract. Delaware courts routinely dismiss manufactured claims of this nature and preclude litigants from transforming a claim for breach into one for fraud. Moreover, Defendants' claims for fraudulent inducement of the SPA rest on non-actionable promises of future performance under the LTIP, not any contemporaneous misrepresentations of present fact regarding the SPA—the contract they seek to rescind. Instead, Defendants rely on Ameris's purported misconduct *after* execution of the SPA relating to the separate LTIP. Indeed, the SAC fails to plead *any* misrepresentations relating to the SPA, much less with the particularity required under Delaware law. For good reason: the SPA disclaims extracontractual representations, confirms that any prior written or oral agreements between the parties are superseded by the SPA, and releases Ameris from claims relating to its pre-SPA closing conduct concerning Balboa Capital Corporation ("Balboa")—the supposed thrust of Defendants' fraudulent inducement claim.

Defendants' claims related to the LTIP also should be dismissed for improper claim-splitting. After the original complaint in this case was filed, Byrne was granted leave to assert in his separate California litigation against Ameris the claim for breach of the LTIP that pervades the SAC here. Defendants should not be permitted to split their claims and related allegations concerning the LTIP in two different forums. Nor should Defendants be heard to challenge the SPA and its indemnification provision as tainted by fraud when they have previously endorsed the SPA as a binding agreement negotiated at arm's length between sophisticated parties represented by counsel and now affirmatively seek indemnification in this lawsuit under the very same SPA indemnification provision they urge be rescinded as fraudulent. Basic principles of estoppel and

ratification prevent Defendants from taking wholly inconsistent positions on the validity of the SPA and the indemnification provision whenever it suits them.

Defendants' claim for breach and indemnification fares no better. Defendants assert that Ameris breached Section 10.8 of the SPA by originally filing its affirmative lawsuit for breach of the SPA indemnification provision in the Delaware Superior Court. Defendants ignore, however, that the indemnification provision giving rise to Ameris's claims expressly allows Ameris to bring suit in any state court in Delaware, including the Delaware Superior Court. And Defendants may not seek indemnification under the SPA—the same provision they seek to rescind—because they failed to follow the necessary procedures under the SPA.

## SUMMARY OF THE ARGUMENT

**I.** Further amendment would be futile. Defendants fail to plead fraud with particularity (Counts I–II). Defendants fail to allege any misrepresentations of present fact relating to the SPA. Rather, Defendants' theory is that Ameris did not intend to comply with the LTIP. That is, at most, a claim for breach of the LTIP improperly styled as a claim sounding in fraud. Defendants are not entitled to rescission of one contract (the SPA) based on Ameris's purported subsequent breach of a second alleged contract (the LTIP). Nor may Defendants pursue claims related to the LTIP here when Byrne has already asserted such claims in another forum of his choosing and conceded that all Defendants act through him. Defendants also should not be heard to claim that the SPA is invalid when they have otherwise endorsed its binding effect, including by affirmatively seeking indemnification under the very SPA provision they seek to invalidate as applied against Ameris.

Defendants also fail to state a claim for breach of Section 10.8 or indemnification (Count III). The SPA authorized Ameris to bring indemnification claims in the Delaware Superior Court. And Defendants have not complied with the indemnification procedures set forth in the SPA.

**II.** Various equitable factors militate against amendment. Defendants waited to seek leave to amend until after Ameris again moved to dismiss their complaint, gaining an improper sneak preview of Ameris's arguments to plead around. Defendants' gamesmanship has prejudiced Ameris by forcing Ameris to waste significant resources on two rounds of mooted briefing.

## STATEMENT OF FACTS[1]

### A. Pursuant to the SPA, Defendants Agree to Indemnify Ameris, Disclaim Extracontractual Representations, and Release Pre-Closing Claims.

On December 10, 2021, Defendants and Ameris entered into the SPA. SAC ¶¶ 2, 26; Ex. 1 § 2.1.[2] Following the closing, Balboa operated as a division of Ameris, with Byrne remaining as an employee in that division. SAC ¶¶ 2, 27; Ex. 1 at 1. In exchange for selling their shares of Balboa, Defendants received over $186 million and other valuable consideration. Ex. 1 § 2.3.

Ameris discovered in diligence that Balboa was involved in at least two pending lawsuits (the "MHT Litigation"). *See* SAC ¶¶ 5, 24; Ex. 1 § 8.2(f). In agreeing to the SPA, and accepting the substantial consideration that flowed to them, Defendants, among other things, committed to indemnify and hold harmless Ameris from and against any losses incurred by Ameris resulting from or arising out of the MHT Litigation. Ex. 1 § 8.2(f). As of February 2, 2026, Ameris's losses sustained in connection with the MHT Litigation totaled over $1.8 million. *See* D.I. 1 ¶ 28. Defendants have not reimbursed Ameris for these significant losses, despite Byrne's assurance in November 2023 that he "agree[d] to reimburse Ameris for the MHT legal invoices per [his] contractual obligation [regarding MHT] in the stock purchase agreement." *Id.* ¶¶ 25, 45.

In executing the SPA, Defendants disclaimed any representations or agreements related to the SPA other than those memorialized in the SPA. Defendants agreed that the SPA "constitute[d]

---

[1] Ameris assumes the truth of the alleged facts drawn from Defendants' putative Second Amended Complaint only for purposes of this brief and reserves the right to dispute any allegations.

[2] "Ex." citations refer to the exhibits attached to the Declaration of Megan Ix Brison of even date.

the final, complete and exclusive statement of the agreement between the parties with respect to the subject matter hereof and supersede[d] all prior written agreements and all prior or contemporaneous oral agreements with respect to the subject matter hereof." Ex. 1 § 10.5. Defendants further agreed that they and their counsel, along with Ameris, "mutually contributed to [the SPA's] drafting." *Id.* § 10.16(g). Defendants represented in court as recently as December 18, 2025—five days *before* filing their lawsuit for fraudulent inducement of the SPA on December 23—that "the SPA was drafted by sophisticated parties negotiating at arms-length." Ex. 2 at 2, 10. In fact, Defendants insisted that *Ameris* "cannot credibly challenge . . . the propriety of the SPA," *id.* at 10—exactly what Defendants do here.

Under the SPA, Defendants also agreed to release pre-closing claims against Ameris relating to Balboa. In particular, "[s]ubject to and effective as of the Closing," Defendants "release[d] and discharge[d]" Ameris, "to the extent related to the Acquired Companies," *i.e.*, Balboa, "from and against any and all claims, demands, obligations, agreements, debts and liabilities whatsoever, whether known or unknown, both at law and in equity, which any [Defendant] now has, has ever had or may hereafter have against any of the Released Parties arising on or prior to the Closing Date or on account of or arising out of any matter occurring on or prior to the Closing Date, whether or not relating to claims pending on, or asserted after, the Closing Date." Ex. 1 § 5.12. Defendants further "irrevocably covenant[ed] to refrain from, directly or indirectly, asserting any claim, or commencing or causing to be commenced, any claim of any kind against any Released Party, based upon any matter released hereby." *Id.*

### B. Ameris Allegedly Breaches the LTIP After Executing the SPA.

Ameris also allegedly established an LTIP under which Byrne would be entitled to compensation based on certain milestones. SAC ¶ 19. Though Defendants maintain that Ameris's performance under the LTIP was "[c]ritical" to their decision to enter into the SPA, *id.* ¶ 3, the SPA does not mention the "LTIP" by name, much less make the LTIP a condition to closing, incorporate its terms, or attach it as a schedule or exhibit. Ex. 1; *see also id.* § 10.14. Nor does the LTIP mention the SPA or state that the LTIP was "[c]ritical to [Defendants'] inducement to sell Balboa to Ameris." SAC ¶ 3; Ex. 3. Defendants assert that "the LTIP is a separate instrument between different parties governing different obligations," Mot. 2; "[t]he SPA does not mention the LTIP," *id.* at 4; "[t]he SPA governed a corporate transaction, whereas the LTIP is an agreement between Ameris and its employees for employment-based payments," *id.* at 12; and "[t]he LTIP is not part of the SPA, it is not referenced in the SPA, it is between different parties, and it governs different obligations (employee compensation)," *id.* at 15. Defendants nonetheless claim that the LTIP was "an integral component of the acquisition" accomplished by the SPA. *Id.* at 4.

Defendants accuse Ameris of breaching the LTIP based on calculations of bonuses. SAC ¶¶ 3, 27. Despite declaring that Ameris "never intended to honor the LTIP" and made a "fraudulent promise that it would comply with the terms of the LTIP," *id.* ¶¶ 3, 5, Defendants do not here assert any claim for fraudulent inducement of the LTIP, and Byrne did not do so in the California action. Defendants only pursue such claims related to the SPA, which does not condition closing or enforcement on Ameris's performance under the LTIP. Though Defendants assert that they were fraudulently induced to enter into the *SPA* and seek to rescind the *SPA*, *id.* ¶¶ 47, 64, the SAC does not identify any statements by Ameris relating to the *SPA*. Rather, the SAC recites purported misrepresentations concerning Ameris's "undisclosed intent not to perform the LTIP." Mot. 15.

### C. Byrne Sues Ameris in California, Asserting Breach of the LTIP.

In 2024, Byrne sued Ameris concerning the termination of his employment with Ameris. *See Byrne v. Ameris Bank*, No. 24-cv-1989 (C.D. Cal.). In the middle of trial, Byrne was permitted to assert a claim for breach of the LTIP on the exact same theory challenged in this action—namely, Ameris's purported miscalculation of bonuses. *Compare* SAC ¶¶ 20, 27, *with* Ex. 4 ¶¶ 47–54. Byrne tried that claim to a jury, which returned a verdict in his favor. Ex. 5 at 5–7.

Defendants assert that "[t]he SAC rests largely on evidence from the California Action trial." Mot. 1. That action "focused on Ameris's post-closing conduct," SAC ¶ 37 n.9, and by Defendants' own admission did not involve "particularized pre-closing internal communications" relating to Ameris's alleged fraud here—"its undisclosed intent" pre-closing "not to perform the LTIP." *Id.*; Mot. 15. The SAC does not identify any new alleged misrepresentations pre-dating the December 2021 SPA closing. *Compare* SAC ¶¶ 21–22, *with* FAC ¶¶ 19–20.

### D. Ameris Sues Defendants for Failing to Indemnify Ameris as Required by the SPA, and Defendants File This Retaliatory Action.

Despite agreeing in the SPA to indemnify Ameris for the MHT Litigation and independently agreeing to indemnify Ameris in November 2023, Defendants have never indemnified Ameris for over $1.8 million in losses relating to the MHT Litigation. *See supra* p.4.

Under the SPA, Defendants agreed that "the state and federal courts located in the State of Delaware . . . shall have exclusive jurisdiction to hear and determine any Action, and to settle any disputes, which may arise out of or in connection with this Agreement," including "[a]ny dispute submitted to litigation" relating to the indemnification provision. Ex. 1 § 8.4(c). Accordingly, in May 2025, prior to Defendants asserting any claim in Delaware for fraud or otherwise, Ameris filed a lawsuit in the Delaware Superior Court to enforce the SPA indemnification provision. SAC

¶ 48. Defendants now sue Ameris for breach of the SPA based on its Superior Court filing and seek indemnification under the SPA for alleged losses sustained in that action. *Id.* ¶¶ 50, 87–89.

Defendants also claim that their SPA indemnification obligation should be rescinded based on Ameris's purported fraud. *See id.* ¶¶ 7, 47, 48, 64, 78.[3] Defendants assert that Ameris's compliance with the LTIP was uniquely "critical" in their agreeing to the SPA indemnification provision in particular, *see id.* ¶¶ 5, 47, notwithstanding that neither the SPA nor the indemnification provision mentions the LTIP at all, let alone as a material inducement or condition of closing. In seeking at least partial rescission of the SPA, *id.* ¶¶ 7, 47, 64, Defendants do not identify a single SPA provision other than the indemnification provision that is supposedly invalid based on Ameris's alleged misconduct. Of course, it is the indemnification provision through which Defendants would owe Ameris over $1.8 million. And it is the indemnification provision that *Defendants* now affirmatively invoke in seeking indemnification from Ameris. *Id.* ¶¶ 87–89.

**ARGUMENT**

A court "may deny leave to amend a complaint where it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Defendants' proposed amendment fails on each ground.

## I. THE PROPOSED SECOND AMENDED COMPLAINT IS FUTILE.

"[F]utility of amendment is a sufficient basis to deny leave to amend." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). "The standard for

[3] Though Defendants no longer seek reformation, Mot. 8 n.4, the FAC confirmed that their requested relief targeted the indemnification provision specifically. *See* FAC ¶¶ 7, 33, 49, 62.

assessing futility is the 'same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6).'" *Id.* As set forth below, Defendants fail to state any claim for relief.

**A. Defendants Fail to State a Claim for Fraudulent Inducement.**

"Under Delaware law, the elements of fraudulent inducement and fraud are the same": "(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance." *Vatidis v. Trimble, Inc.*, 2019 WL 3546693, at *2 (D. Del. Aug. 5, 2019). Fraud claims are subject to heightened pleading requirements, including that "the circumstances constituting fraud" "[be] state[d] with particularity." Fed. R. Civ. P. 9(b).

**1. Defendants' fraud claim is a bootstrapped claim for breach of contract.**

The SAC rehashes the same claim for breach of the LTIP that Byrne litigated and brought to trial in California. *See* Mot. 1 ("The SAC rests largely on evidence from the California Action trial."). This is textbook bootstrapping. *Transdev on Demand, Inc. v. Blackstreet Inv. Holdings, LLC*, 2020 WL 7027538, at *6 (Del. Ch. Nov. 30, 2020) ("[C]ouching an alleged failure to comply with the contract at issue as a failure to disclose an intention to take certain actions arguably inconsistent with that contract is exactly the type of bootstrapping [courts] will not entertain.").

It is well-settled that "one cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations." *Iotex Commc'ns, Inc. v. Defries*, 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998); *see also PureShares, LLC v. Zimnisky*, 2025 WL 606903, at *6 (D. Del. Feb. 25, 2025) (same). But that is exactly the theory of fraud proffered here—Ameris's "undisclosed intent not to perform the LTIP." Mot. 15. This Court regularly dismisses such claims on the pleadings. *E.g.*, *Cheffers v. Ideagen Software*

*Inc.*, 2025 WL 2549411, at *7–8 (D. Del. Sept. 4, 2025) ("[A] fraud claim can survive a motion to dismiss only 'when the allegations of fraud do not rely solely on the intent not to perform obligations imposed by an agreement.'"); *PureShares*, 2025 WL 606903, at *8 (plaintiffs "only told 'the story of . . . [the d]efendant's failure to perform under the contract'").

Every element of Defendants' fraud claim is built from Ameris's alleged breach of the LTIP litigated in California. Defendants assert that "[t]he issues decided in the California Action," including "whether Ameris breached the LTIP," "overlap substantially with core issues in this action" and that Ameris should be bound by the findings in that action, SAC ¶ 44, but suggest that there is no claim for breach against which the anti-bootstrapping rule could attach. Mot. 12. Defendants cannot erase the fact that Byrne has already litigated the alleged LTIP breach to trial.[4]

Defendants' reliance on *Levy Family Investors, LLC v. Oars + Alps LLC*, 2022 WL 245543 (Del. Ch. Jan. 27, 2022), is misplaced. The court confirmed that "the anti-bootstrapping rule bars a fraud claim where the plaintiff . . . alleges that the defendant never intended to comply with the agreement at issue at the time the parties entered into it." *Id.* at *8. That is exactly what Defendants allege. *See, e.g.*, SAC ¶ 3. The "exceptions" set forth in *Levy* do not save Defendants' claim. *See* Mot. 13–14. Defendants fail to identify a distinct fraud injury; though they purport to seek rescission of the SPA and/or rescissory damages, Defendants' alleged harm arises from the same nonperformance giving rise to the breach claim in California. Defendants do not identify a separate tort injury; they simply identify a different contractual consequence they now wish to avoid—Defendants' SPA indemnification obligations. Nor does Ameris's alleged conduct predating

[4] Defendants argue that Ameris acknowledged in its first motion to dismiss "the absence of a breach of contract claim." Case No. 25-cv-1557, D.I. 11 at 17. Ameris was referencing the fact that the California court had, as of that time, "foreclosed Byrne's attempt at an LTIP breach of contract claim." *Id.* The California court subsequently *allowed* Byrne to assert a claim for breach of the LTIP, which Byrne readily acknowledges. *See, e.g.*, SAC ¶¶ 8, 44.

execution of the SPA help Defendants. That conduct consists of Ameris's supposed assurance that it would "honor and comply with the LTIP's terms post-closing." SAC ¶ 22. That is not a separate misrepresentation of existing fact about the SPA; it is the same alleged promise of future performance that Defendants say Ameris later breached. *See WIA Holdings LLC v. Scottish Am. Cap. LLC*, 2026 WL 1204494, at *13 (Del. Ch. Jan. 20, 2026) ("[E]ach [*Levy* exception] simply describes circumstances in which the fraud claim has some discernable substantive independence from the contract claim. Where that independence is absent, the doctrine applies." (footnote omitted)).

**2. Defendants do not identify any misrepresentations concerning the SPA.**

Defendants assert that they were fraudulently induced to enter into the SPA, yet do not identify a single allegedly fraudulent statement made by Ameris regarding the contract they seek to rescind—the SPA. Rather, all of the alleged misrepresentations challenged by Defendants relate solely to Ameris's calculation of proceeds allegedly owed to Byrne under the LTIP, not the SPA. *See, e.g.*, SAC ¶ 22. As Defendants repeatedly declare, "[t]he LTIP is not part of the SPA, it is not referenced in the SPA, it is between different parties, and it governs different obligations (employee compensation)." Mot. 15; *see also id.* at 2, 4, 12. Defendants cannot claim fraud in the inducement of the SPA without identifying a single misrepresentation relating to that contract.

**3. Defendants' claim for fraudulent inducement is barred by the SPA.**

a) The SPA integration clause alone defeats Defendants' fraud claim.

Defendants assert that "the LTIP was an integral component" of the SPA transaction. Mot. 4. Defendants, however, disclaimed any extracontractual representations when entering the fully-integrated SPA. Ex. 1 § 10.5. The SPA's integration provision defeats any claim of justifiable reliance on Ameris's alleged misrepresentations concerning the separate LTIP. *See Evans v. Cantor Ins. Grp., LP*, 2022 WL 3908005, at *6 (D. Del. Aug. 30, 2022) (plaintiff failed to plead

"how he could justifiably rely upon [extracontractual] representation[s] given the Side Letter Agreement's integration clause"); *Black Horse Cap., LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *22 (Del. Ch. Sept. 30, 2014) (no justifiable reliance "in the face of clear contractual language in which Plaintiffs agreed there were no prior agreements or understandings").

*Shareholder Representative Services LLC v. Albertsons Cos.*, 2021 WL 2311455 (Del. Ch. June 7, 2021), is directly on point. There, as here, the parties' agreement contained an integration clause providing that the merger agreement constituted the "entire agreement" between the parties and superseded all prior agreements and understandings. *Id.* at *11; Ex. 1 § 10.5. And there, as here, "[t]he gravamen of [the plaintiff's] fraudulent inducement claim [was] that [the defendant] lied about its 'future intent' with respect to the operation of the business post-closing." *Albertsons*, 2021 WL 2311455, at *12; *see, e.g.*, SAC ¶ 5. The court held that the fraudulent inducement claim failed based on the integration clause alone precisely because it challenged "expressions of future intent or future promises." *Albertsons*, 2021 WL 2311455, at *12; *see also Talkdesk, Inc. v. DM Trans, LLC*, 2024 WL 2799307, at *9–11 (Del. Super. May 31, 2024) (dismissing claim even though "the integration clause lack[ed] anti-reliance language that explicitly provide[d] that a party [was] not relying on any extracontractual relations" because "essence" of claim was "based on future performance, and the integration clause prevent[ed] the Court from finding justifiable reliance"); *Black Horse*, 2014 WL 5025926, at *25 ("Entertaining a claim that so plainly conflicts with the language of th[e] [contracts] would render the integration clauses contained in them mere surplusage—a result that our canons of contractual interpretation strongly discourage."); *cf. Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 50 (Del. Ch. 2015) (parties "cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises

and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim").

Moreover, as in *Albertsons*, the alleged fraud—Ameris's "undisclosed intent not to perform the LTIP" to induce Defendants "to enter into the SPA and assume the indemnification obligations set forth therein," Mot. 13, 15—conflicts with and varies the express terms of the contract. *Id.* at 15. Defendants claim that they agreed to the SPA (and the indemnification provision) only in exchange for Ameris's promise of performance under the LTIP that the SPA "does not mention." *See id.* at 4, 15; SAC ¶¶ 3, 5–6. Defendants thus seek to rewrite the SPA to make their indemnification obligations contingent on Ameris's performance under the LTIP, imposing conditions that do not exist in the SPA and are extinguished by the SPA integration clause. *See Black Horse*, 2014 WL 5025926, at *25 (courts should be allowed to "bar" fraud claims asserting that, "as consideration for [entering a merger]," defendants had made promises regarding a separate transaction to take place "at some point after the Merger, even though the parties did not mention that promise in the written and integrated [merger agreement]").

*Johnson & Johnson v. Fortis Advisors LLC*, 352 A.3d 229 (Del. 2026), does not change the analysis. There, the alleged fraud involved misrepresentations of present fact regarding the likelihood that a milestone would be achieved, and the court considered whether an exclusive remedy provision—not an integration clause—barred the fraud claim. *Id.* at 271. Here, the alleged fraudulent inducement of the SPA concerns Ameris's "expressions of future intent or future promises," *Albertsons*, 2021 WL 2311455, at *12—namely, Ameris's intent to comply with the LTIP, *see* Mot. 1, 9, 15—for which the SPA integration clause alone suffices to defeat Defendants' claim. *See Albertsons*, 2021 WL 2311455, at *12 ("While anti-reliance language is needed to stand as a contractual bar to an extra-contractual fraud claim based on factual misrepresentations,

an integration clause alone is sufficient to bar a fraud claim based on expressions of future intent or future promises." (footnote omitted)); *cf. Nofar USA LLC v. Venter*, 2026 WL 266529, at *3 (D. Del. Feb. 2, 2026) (plaintiff alleged that "MIPA itself contained knowingly false statements," not that defendants lied about their intent to perform in the future). Delaware courts have continued to dismiss fraud claims on these grounds even after *Johnson & Johnson*. *See, e.g.*, *MERA USA, LLC v. MCS Burbank, LLC*, 2026 WL 2547077, at *17–18 (Del. Ch. Aug. 28, 2026) (fraud claim failed for lack of justifiable reliance based on integration clause). This Court should do the same.

b) <u>Defendants released the instant fraud claims against Ameris.</u>

Pursuant to Section 5.12 of the SPA, Defendants released (and covenanted not to sue) Ameris, "to the extent related to the Acquired Companies," *i.e.*, Balboa, from "any and all claims . . . known or unknown" that Defendants then had or may thereafter have against Ameris "arising on or prior to the Closing Date or on account of or arising out of any matter occurring on or prior to the Closing Date." Ex. 1 § 5.12. Defendants' fraud claims are covered by this broad release. They are each premised on Ameris's pre-closing representations concerning application of the LTIP at Balboa and necessarily are on account of or arise out of matters occurring prior to the SPA closing. *See* SAC ¶¶ 21–22. The claims are thus barred by the SPA. *See Jhaveri v. K1 Inv. Mgmt. LLC*, 2025 WL 1779507, at *6–9 (Del. Ch. June 27, 2025) (release in merger agreement barred fraud claims based on "pre-closing misconduct"); *Seven Invs., LLC v. AD Cap., LLC*, 32 A.3d 391, 398 (Del. Ch. 2011) (release in parties' agreement barred claim for fraud).[5] None of the exceptions in Section 5.12 can resuscitate Defendants' claims based on extracontractual representations.

---

[5] Defendants cannot demonstrate that the alleged fraud is "different sequentially and conceptually" from the subject of the release. *Seven Invs.*, 32 A.3d at 400. Rather, the alleged fraud described in the SAC falls squarely within the scope of the release and remains barred.

### 4. Defendants fail to allege fraud based on Ameris's intent to comply with the LTIP in the future.

Defendants challenge alleged misrepresentations concerning Ameris's future compliance with the LTIP. *See, e.g.*, SAC ¶¶ 5, 21–22. "[T]he failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform at the time the promise was made." *Cato Cap. LLC v. Hemispherx Biopharma, Inc.*, 70 F. Supp. 3d 607, 627 (D. Del. 2014). Indeed, a plaintiff "cannot make out a fraudulent inducement claim simply by showing that the defendants breached a promise to perform and alleging that the defendant never intended to perform at the time of its promise." *vMedex, Inc. v. TDS Operating, Inc.*, 2020 WL 4925512, at *11 (D. Del. Aug. 21, 2020). But that is exactly what Defendants assert here: "Ameris never intended to honor the LTIP." SAC ¶ 3.

Defendants could state a claim on these grounds only if the SAC "allege[d] particularized facts that allow the Court to infer that, at the time the promise was made, the speaker had no intention of keeping it." *Sapp v. Indus. Action Servs., LLC*, 2024 WL 3444633, at *4 (D. Del. July 17, 2024). The SAC, however, lacks *any* allegations—particularized or otherwise—showing that Ameris contemporaneously knew at the time of the purported representations *in 2021* that it would not "comply" with the LTIP *in the future*. Rather, Defendants point to purported activity post-dating the closing of the SPA in December 2021—namely, Ameris's supposed failure to calculate LTIP proceeds as Byrne desired—as evidencing Ameris's knowledge as of the time of SPA execution in December 2021. *See* SAC ¶¶ 27–30, 36–39.[6] That fails to state a claim for fraud.

---

[6] Nor does Defendants' allegation that Ameris failed to take "preparatory steps" "prior to closing" "to comply with the LTIP," SAC ¶¶ 31–32, give rise to an inference of fraud as of closing, when the LTIP was not even allegedly agreed to until the same day the SPA was signed and the first awards allegedly owed under the LTIP were not due until December 2022, a year after execution of the SPA. *Id.* ¶¶ 26, 28. At most, this devolves into an allegation that Ameris failed to perform under the LTIP once the LTIP went into effect. That is insufficient to state a claim for fraud. *See* (continued…)

Defendants argue that Ameris is imposing an artificially high pleading burden. Mot. 9–12. Not so. "Unlike a traditional fraud claim, which allows intent to be pled generally, promissory fraud relies on the speaker's state of mind at the time the statement is made, so 'a general averment of a culpable state of mind is insufficient,' and a plaintiff must 'plead specific facts that lead to a reasonable inference that the promissor had no intention of performing at the time the promise was made.'" *AJZN, Inc. v. Yu*, 2015 WL 331937, at *9 (D. Del. Jan. 26, 2015). This Court often dismisses claims for fraudulent inducement on this ground under Rule 9(b), including after *Berk v. Choy*, 607 U.S. 187 (2026), on which Defendants rely, Mot. 10. *E.g.*, *Roux v. Okhandiar*, 2026 WL 884133, at *7 (D. Del. Mar. 31, 2026); *Murphy Marine Servs., Inc. v. Dole Fresh Fruit Co.*, 2022 WL 610755, at *3 (D. Del. Jan. 13, 2022); *Emerson v. Mezzion Int'l, LLC*, 2021 WL 4476925, at *3 (D. Del. Sept. 30, 2021); *Hopkins v. Concorde Career Colls., Inc.*, 2016 WL 1238775, at *3 (D. Del. Mar. 29, 2016).

The SAC lacks any well-pled factual allegations demonstrating that Ameris did not intend to comply with the LTIP as of December 2021. Under any pleading standard and by any measure, Defendants' allegations of "fraud by hindsight" fail to state a claim. *See Sapp*, 2024 WL 3444633, at *5 (complaint was "devoid of allegations regarding [defendant's] intent at the time the representation was made").

---

*Adage Inv. Partners, LLC v. Bounce AI, Inc.*, 2026 WL 2583139, at *8 (Del. Super. Aug. 27, 2026) ("Delaware courts generally require something more than post-closing non-performance to justify an inference of wrongful intent to support a claim of fraud."); *Transdev*, 2020 WL 7027538, at *6–7 (allegations that defendant "maintained and provided its records in a way that did not comply with what it had promised" is "a mundane contract claim, and not a tort claim"); *Cornell Glasgow, LLC v. La Grange Props. LLC*, 2012 WL 2106945, at *8 (Del. Super. June 6, 2012) ("[E]ven if the defendants never intended to perform, their alleged scheme to breach the [agreement] simply cannot give rise to an actionable claim for fraud…."). In any event, Defendants fail to allege that *any* steps were required prior to closing in order for Ameris to satisfy the LTIP.

### 5. Defendants are not entitled to rescission of the SPA.

"[A] plaintiff seeking rescission must plead an offer to return the benefits it has received under the contract it wishes to rescind." *Toner v. Allstate Ins. Co.*, 829 F. Supp. 695, 706 (D. Del. 1993). Defendants do not allege that they are "ready, willing and able to return [Ameris] to the *status quo ante*" free of contingencies. *Kostyszyn v. Martuscelli*, 2014 WL 3510676, at *5 (Del. Ch. July 14, 2014); *cf.* SAC ¶ 63 (alleging Defendants' intent to potentially "return" unidentified and unquantified "consideration" "following discovery"). Their claim should be dismissed. *See Winters v. Patel*, 154 F. App'x 294, 297–98 (3d Cir. 2005) (party waives claim when it fails "to tender back the consideration [it] received under that agreement"); *Allied Erecting & Dismantling Co. v. USX Corp.*, 249 F.3d 191, 199 (3d Cir. 2001) ("once fraudulent inducement is alleged the party must either return consideration or abandon the claim").

Nor can Defendants seek rescission of the SPA (or "partial rescission of the indemnification provisions in Section 8 of the SPA," Mot. 17) when they have ratified the SPA by affirmatively seeking indemnification in their favor under the same SPA provision.[7] "[O]ne who, after discovering the fraud, affirms a fraudulently obtained contract or acts in a way inconsistent with disaffirmance may not avail himself of" rescission. *Toner*, 829 F. Supp. at 706; *Kostyszyn*, 2014 WL 3510676, at *5 ("[A] party who discovers that he has been misled into entering into a contract by fraud must act with reasonable diligence if he seeks rescission rather than affirming the contract and suing for damages."). Defendants are not just pleading alternative theories of recovery. Mot. 17. Defendants' claim for fraudulent inducement is not pled in the alternative to their claim for breach of contract/indemnification. Rather, the SAC assumes the SPA—and its

[7] Defendants' arguments regarding their purported ability to enforce a forum selection provision in the SPA are inapposite. Mot. 19. Defendants are now affirmatively invoking and seeking to enforce the same indemnification provision of the SPA they ask the Court to rescind as fraudulent.

indemnification provision—was the product of fraud and must be rescinded, and can still be enforced by and result in indemnification of Defendants.[8] *See* SAC ¶¶ 64, 81, 87–89. But the indemnification provision cannot be both voidable and ratified. Defendants "may not have it both ways." *Sun Life Assurance Co. of Can. v. Berck*, 719 F. Supp. 2d 410, 419 (D. Del. 2010). Defendants have chosen their path, and their ratification of the SPA eliminates rescission. *Winters*, 154 F. App'x at 297 ("Once [plaintiff] affirmed the [contract], she lost her ability to rescind."); *Am. Life Ins. Co. v. Parra*, 187 F. Supp. 2d 203, 210 (D. Del. 2002) ("One who has been induced by fraud to enter into a contract may either rescind the contract and recover what he has parted with or affirm the contract and sue for damages caused by the fraud. He cannot do both, because the two remedies are inconsistent and mutually exclusive."); *Andor Pharms., LLC v. Lannett Co.*, 2024 WL 1855112, at *13 (Del. Super. Apr. 29, 2024) (reformation claim barred by party's ratification of contract).

**6. Defendants' alternative claim for "equitable fraud" likewise fails.**

Because Defendants fail to plead fraudulent inducement with the requisite particularity, their equitable fraud claim pled in the alternative fails as well. *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *9 (Del. Ch. Jan. 30, 2015). In addition, "an equitable fraud . . . claim lies only if there is either: (i) a special relationship between the parties over which equity takes jurisdiction (like a fiduciary relationship) or (ii) justification for a remedy that only

[8] Less than one week before suing for fraud, Defendants admitted that the SPA is a binding agreement negotiated at arm's length between sophisticated parties represented by counsel. Ex. 2 at 2, 10. Defendants' shifting positions warrant dismissal of their claims. *See Yetter v. Wise Power Sys., Inc.*, 929 F. Supp. 2d 329, 331 (D. Del. 2013) (dismissal due to "completely inconsistent" legal positions); *Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*, 789 F. Supp. 2d 622, 631–36 (E.D. Pa. 2011) (dismissing lawsuit based on earlier admissions); *AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219, 227 (D.N.J. 1992) (estopping defendant from challenging enforceability after taking "diametrically opposed positions" on contract's validity in different courts while "[e]mbroiled in simultaneous litigation over the same subject matter with the same adversary").

equity can afford." *Id.* Defendants fail to allege "any type of special relationship with [Ameris] that would support a claim." *Universal Enter. Grp., L.P. v. Duncan Petroleum Corp.*, 2013 WL 3353743, at *17 (Del. Ch. July 1, 2013). And their request for "damages," SAC ¶¶ 65, 79, confirms that equitable relief is not needed. *Cf. LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*, 2018 WL 1559936, at *18 n.243 (Del. Ch. Mar. 28, 2018) ("equitable fraud cannot be asserted simply by alleging common law fraud minus scienter and tacking on a request for" equitable relief).

### B. Defendants Cannot Split Their LTIP Claims in Two Different Forums.

Defendants have split their LTIP-related claims in two forums—California and Delaware. Delaware's rule against claim splitting is designed to "prevent burdening the same defendant with duplicative proceedings in different courts brought by the same plaintiff based on different causes of action arising out of a common underlying nucleus of facts." *Goureau v. Lemonis*, 2021 WL 1197531, at *8 (Del. Ch. Mar. 30, 2021). Defendants cannot claim a lack of common facts when they argue that Ameris should be estopped from relitigating like LTIP issues here. *See* SAC ¶ 44. And the existence of two alleged agreements with differing forum provisions does not grant Defendants license to litigate the same LTIP dispute twice. *See Daugherty v. Dondero*, 2023 WL 461112, at *7 (Del. Ch. Jan. 27, 2023) (dismissal for improper claim splitting).[9]

### C. Defendants Fail to State a Claim for Breach of Contract or Indemnification.

Defendants agreed that Delaware state courts, including the Delaware Superior Court, had jurisdiction to hear and determine any action arising out of or in connection with the SPA, including any dispute over indemnification. Ex. 1 § 8.4(c). Defendants thus have failed to allege

---

[9] Defendants argue that there is no claim splitting here because the Byrne trusts were not parties to the California litigation. Mot. 18. Defendants, however, admit that these trusts act through Byrne. SAC ¶ 3 n.2. They are thus in privity with Byrne. *See PVP Aston, LLC v. Fin. Structures Ltd.*, 2023 WL 2728775, at *11 (Del. Super. Mar. 31, 2023) ("Courts routinely hold that entities under common control are in privity with each other for collateral estoppel purposes.").

any breach of the SPA. Nor do Defendants state a claim for indemnification. Defendants allege that they "demanded" indemnification from Ameris. SAC ¶ 88. Defendants omit that they first tendered a claim for indemnification on September 29, 2026—one day before filing their claim. Ex. 6 (exhibits to claim notice omitted). Section 8.4(b) allows a party to "resort to litigation" only after allowing for 30 days of good-faith negotiations following the indemnifying party's notification that it disputes liability. Ex. 1 § 8.4(b). Defendants failed to follow this procedure, and the indemnification claim is thus defective. Moreover, Section 8.5 provides that no claim or action under Article VIII may be brought more than 12 months following the breach. Ex. 1 § 8.5. Ameris allegedly breached Section 10.8 on May 7, 2025 by filing its Superior Court action. SAC ¶¶ 48, 83. Defendants did not assert a claim under Article VIII until September 30, 2026, nearly seventeen months later.

## II. EQUITABLE FACTORS WEIGH AGAINST FURTHER AMENDMENT.

Defendants' "undue delay, bad faith, [and] dilatory motive" in seeking amendment, along with the "prejudice" to Ameris, "justify a denial of leave to amend." *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "The SAC rests largely on evidence from the California Action trial." Mot. 1. That information was available to Defendants by June 11, 2026, *id.*, yet Defendants waited to seek leave to amend until September 30—after Ameris had (again) moved to dismiss. Defendants could have moved at any point between June 11 and July 23 (when Ameris filed its most recent motion to dismiss). The delay was deliberate: Defendants waited so they could attempt to plead around the issues Ameris raised. Defendants' delay also unduly prejudices Ameris, which has incurred significant cost and expense moving twice to dismiss Defendants' complaint.

## CONCLUSION

No amount of repleading can remedy the fundamental legal defects that plague Defendants' theories of fraud and breach of contract. Defendants' Motion should be denied.

SMITH, KATZENSTEIN & JENKINS LLP

By: /s/ *Megan Ix Brison*
Elizabeth Wilburn Joyce (DE Bar #3666)
Megan Ix Brison (DE Bar #6721)
Lauren A. Black (DE Bar #7048)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
ewj@skjlaw.com
mib@skjlaw.com
lab@skjlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant Ameris Bank*

OF COUNSEL:

Benjamin J. Razi
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
brazi@cov.com

Robert C. Gianchetti
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001
(212) 841-1000
rgianchetti@cov.com

Dated: November 16, 2026